# EAGLE GLASS & MANUFACTURING COMPANY *v.* ROWE, INDIVIDUALLY AND AS PRESIDENT OF THE AMERICAN FLINT GLASS WORKERS' UNION, ET. AL.

## APPEAL FROM AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 23.    Submitted December 18, 1916.—Decided December 10, 1917.

In a suit to restrain alleged concerted wrongful conduct upon the part of officials of a labor union, a temporary injunction should not be granted against those who were not served and did not submit themselves to the jurisdiction.

The bill alleged that the answering defendants had constituted other persons named as defendants their agents and representatives and had assisted and were supporting them in their alleged wrongful conduct. *Held*, in view of specific denials and supporting affidavits, not rebutted, that the Circuit Court of Appeals did not err in dissolving the temporary injunction.

Where an application for a temporary injunction has been submitted upon affidavits taken *ex parte*, without opportunity for cross-examination, and without any consent that the court proceed to final determination of the merits, it is error for the Circuit Court of Appeals upon interlocutory appeal to direct a dismissal of the bill unless on its face there is no ground for equitable relief.

The plaintiff's bill set up a contract with its employees identical in form with the contract involved in *Hitchman Coal & Coke Co.* v. *Mitchell, ante*, 229, and charged defendants with the formation and pursuit of a scheme to "unionize" the plaintiff's shop by interfering with its employees similar in nature, motive and methods to the scheme held illegal in that case. *Held*, that the bill stated an equitable cause of action, and that it was error for the Circuit Court of Appeals to dismiss it on interlocutory appeal without affording plaintiff an opportunity to prove the allegations upon final hearing, as against the defendants within the jurisdiction.

219 Fed. Rep. 719, affirmed in part and reversed in part.

THE case is stated in the opinion.

*Mr. George R. E. Gilchrist* and *Mr. Hannis Taylor* for appellant and petitioner.

*Mr. John A. Howard* for appellees and respondents.

MR. JUSTICE PITNEY delivered the opinion of the court.

This case is quite similar to *Hitchman Coal & Coke Co.* v. *Mitchell,* No. 11, this day decided, *ante,* 229, and was submitted at the time of the argument of that case. It was a suit in equity, commenced July 28, 1913, in the United States District Court for the Northern District of West Virginia. This was after that court had rendered its final decree in the *Hitchman Case* (202 Fed. Rep. 512), and the decree awarding a temporary injunction herein was made before the reversal of the final decree in the *Hitchman Case* by the Circuit Court of Appeals (214 Fed. Rep. 685).

The plaintiff, Eagle Glass & Manufacturing Company, is a West Virginia corporation, having its principal office and its manufacturing plant in that State. The object of the bill was to restrain the defendants, officers and members of the American Flint Glass Workers' Union, a voluntary association having its principal office at Toledo, in the State of Ohio, from interfering with the relations existing between plaintiff and its employees for the purpose of compelling plaintiff to "unionize" its factory. The original defendants, Thomas W. Rowe, Joseph Gillooly, and three others, were among the chief executive officers of the Union, and were sued individually and as such officers. The federal jurisdiction was invoked on the ground of diversity of citizenship, it being alleged that all of the defendants were citizens of the State of Ohio.

Upon the filing of the bill, with numerous affidavits verifying its averments, and showing that plaintiff's factory was run as a non-union shop under individual agreements with its employees, each employee having signed a

paper declaring that he was not a member of the American Flint Glass Workers' Union and would not become a member while an employee of the Eagle Company, that the company agreed that it would run non-union while he was in its employ, that if at any time while so employed he desired to become connected with the Union he would withdraw from the employ of the company, and that while in its employ he would not make any effort amongst its employees to bring about the unionizing of the plant against the company's wish; that the defendants, with notice of this, were making efforts, through Gillooly as organizer, and threatening further efforts to induce some of plaintiff's employees to quit its employ, and to persuade others secretly to join the Union and remain at work in plaintiff's factory contrary to the terms of their agreement until a sufficient number had joined so as to be able by threatening to quit in a body to compel the unionization of the shop; and that by the activities of defendants the plaintiff was threatened with irreparable injury; the District Court granted a restraining order.

Process requiring defendants to answer the bill was promptly issued, but was served upon Gillooly alone, together with the restraining order. At the request of an attorney, a general appearance was entered for the other defendants. Gillooly filed an answer, amounting to a plea to the jurisdiction of the court, based upon the allegation that he was a resident and citizen of the State of West Virginia, and not of the State of Ohio as alleged in the bill. Upon this answer and affidavits in support of it he moved to dissolve the restraining order and dismiss plaintiff's suit, and thereupon, on the ground that he was a citizen of West Virginia, an order was made dismissing the bill as to him, without prejudice, and retaining the suit as to the other defendants. Plaintiff moved for a temporary injunction against them, whereupon the attorney at whose request their appearance had been entered moved to strike

it out on the ground that his request was due to inadvertence and in fact he had no authority to appear for them. His motion was granted; but in the meantime plaintiff obtained leave to file and did file an amended bill, adding as defendants Peter J. Glasstetter and seven other parties named, residents of Steubenville, Ohio, and citizens of that State, and averring that they were members of the American Flint Glass Workers' Union, had constituted the original defendants, including Gillooly, their agents and representatives, and had assisted and were supporting them in their efforts to unionize plaintiff's employees and to force plaintiff to recognize the Union. Process to answer the amended bill was issued and was served upon the added defendants, the remaining original defendants being returned "not found." Afterwards, and upon proper notice to the served defendants, plaintiff renewed its motion for a temporary injunction, basing it upon the original bill, exhibits, and accompanying affidavits, the amended bill, and some additional affidavits. Meanwhile the served defendants, who may be called the Steubenville defendants, filed answers denying knowledge of the matters alleged in the bill, denying that they had constituted Gillooly and the other original defendants their agents or representatives, or had assisted or supported them in the effort to unionize plaintiff's employees and force plaintiff to recognize the American Flint Glass Workers' Union, admitting that they were members of a local union of glass workers at Steubenville which was affiliated with the principal Union, and averring that except their relation as members of the local union they had no connection or relation with the other defendants, were not officers, agents, representatives, or organizers of the Union, and even in their capacity as members of their local had not by act, word, or deed authorized, assisted, aided, or encouraged any of the other defendants in doing any of the things alleged in the bill or amended bill.

These answers were supported by affidavits of the answering defendants which were not specifically rebutted by the plaintiff.

The court, having struck out the entry of appearance for the original defendants other than Gillooly, made a decree granting a temporary injunction to restrain the defendants in the cause from interfering with plaintiff's employees, the form of the injunction being modeled upon that ordered by the final decree made in *Hitchman Coal & Coke Co.* v. *Mitchell.*

The answering defendants appealed to the Circuit Court of Appeals, and that court (219 Fed. Rep. 719) reversed the decree: holding that as the Steubenville defendants submitted affidavits that they were only members, not officers, of a local union, that the original defendants, who were the general officers of the Union, were not authorized to represent them in the alleged illegal acts, and that they knew nothing of the efforts to unionize plaintiff's factory, and as plaintiff had made no showing to the contrary, it was erroneous to issue a temporary injunction against the defendants (other than Gillooly) named in the bill and amended bill; that as Rowe and the other general officers were not served, no relief could be given against them unless it could be said that they were brought before the court by representation when the Steubenville defendants were brought in; and that as plaintiff had no case against the latter defendants for participation in the alleged torts, there was no such common or general interest as authorized a decree against the defendants not served by virtue of the service upon and appearance of the Steubenville defendants. Having said this to show error in the decree awarding a temporary injunction, the court concluded its opinion as follows: "All the questions involved in the merits of the appeal were decided adversely to the appellee by this court in *Mitchell* v. *Hitchman Coal & Coke Co.,* 214 Fed. Rep. 685."

Thereupon a decree was made reversing the decree of the District Court, and remanding the cause with directions not only to dissolve the injunction, but to "dismiss the bill in accordance with the opinion of this court." The mandate was stayed pending application to this court for a writ of certiorari. Afterwards an appeal was allowed by one of the Circuit Court judges, together with a supersedeas. The transcript on appeal having been filed in this court, an application for a writ of certiorari was afterwards presented, consideration of which was postponed to the hearing of the appeal.

Since it appears from the averments of the bill and amended bill that the federal jurisdiction was invoked solely upon the ground of diversity of citizenship, it is evident that, as in the *Hitchman Case*, the appeal must be dismissed. 241 U. S. 644. But, as in that case, we grant the writ of certiorari, the record on appeal to stand as the return to the writ. And, as the case was submitted on the merits, we proceed to dispose of them.

So far as the decision of the Circuit Court of Appeals dissolved the temporary injunction upon the ground that the Steubenville defendants had denied, and plaintiff had not adduced sufficient evidence to sustain, the averment of the amended bill that they had constituted Gillooly and the other original defendants their agents and representatives and had assisted and supported them in their efforts to unionize plaintiff's employees and force plaintiff to recognize the American Flint Glass Workers' Union, we see no reason to disturb the decision.

But the court went further, and directed a dismissal of the bill. Since the cause had not gone to final hearing in the District Court, the bill could not properly be dismissed upon appeal unless it appeared that the court was in possession of the materials necessary to enable it to do full and complete justice between the parties. Where by consent of parties the case has been submitted for a final de-

termination of the merits, or upon the face of the bill there is no ground for equitable relief, the appellate court may finally dispose of the merits upon an appeal from an interlocutory order. *Smith* v. *Vulcan Iron Works*, 165 U. S. 518, 525; *Mast, Foos & Co.* v. *Stover Mfg. Co.*, 177 U. S. 485, 494; *Castner* v. *Coffman*, 178 U. S. 168, 184; *Harriman* v. *Northern Securities Co.*, 197 U. S. 244, 287; *U. S. Fidelity Co.* v. *Bray*, 225 U. S. 205, 214; *Denver* v. *New York Trust Co.*, 229 U. S. 123, 136. But in this case the application for a temporary injunction was submitted upon affidavits taken *ex parte*, without opportunity for cross-examination, and without any consent that the court proceed to final determination of the merits. Hence there was no basis for such a determination on appeal unless it appeared upon the face of the bill that there was no ground for equitable relief. That this was in effect the decision of the Circuit Court of Appeals is evident from the fact that it was rested upon the authority of *Mitchell* v. *Hitchman Coal & Coke Co.* In that case the same court had expressed the following opinion (214 Fed. Rep. 685, 714):

"The court below also reached the conclusion that the defendants have caused and are attempting to cause the nonunion members employed by the plaintiff to break a contract which it has with the nonunion operators. The contract in question is in the following language:

"'I am employed by and work for the Hitchman Coal & Coke Company with the express understanding that I am not a member of the United Mine Workers of America, and will not become so while an employé of the Hitchman Coal & Coke Company; that the Hitchman Coal & Coke Company is run nonunion and agrees with me that it will run nonunion while I am in its employ. If at any time while I am employed by the Hitchman Coal & Coke Company I want to become connected with the United Mine Workers of America, or any affiliated organization, I agree

to withdraw from the employment of said company, and agree that while I am in the employ of that company (that) I will not make any efforts amongst its employes to bring about the unionizing of that mine against the company's wish. I have either read the above or heard the same read.'

"It will be observed that by the terms of the contract (that) either of the parties thereto may at will terminate the same, and while it is provided that so long as the employé continues to work for the plaintiff he shall not join this organization, nevertheless there is nothing in the contract. which requires such employés to work for any fixed or definite period. If at any time after employment any of them should decide to join the defendant organization, the plaintiff could not under the contract recover damages for a breach of the same. In other words, the employés under this contract, if they deem proper, may at any moment join a labor union, and the only penalty provided therefor is that they cannot secure further employment from the plaintiff. Therefore, under this contract, if the nonunion men, or any of them, should see fit to join the United Mine Workers of America on account of lawful and persuasive methods on the part of the defendants, and as a result of such action on their part were to be discharged by the plaintiff, it could not maintain an action against them on account of such conduct on their part. Such being the case, it would be unreasonable to hold that the action of the defendants would render the United Mine Workers of America liable in damages to the plaintiff because they had employed lawful methods to induce the nonunion miners to become members of their organization.

"Under these circumstances, we fail to see how this contract can be taken as a basis for restraining the defendants from using lawful methods for the purpose of inducing the parties to the contract to join the organization."

This reasoning, essential to the decision reached, is

erroneous for several reasons, as we have now held in reversing the *Hitchman* decree, viz: (a) because plaintiff was entitled by law to be protected from interference with the good will of its employees, although they were at liberty to quit the employment at pleasure; (b) because the case involved no question of the rights of employees, and their right to quit the employment gave to defendants no right to instigate a strike; and (c) because the methods pursued by the defendants were not lawful methods.

The present case, according to the averments of the bill and amended bill, differs from the *Hitchman Case* principally in this: that it appeared that Gillooly, as organizer, had used money and had threatened to use dynamite to reinforce his other efforts to coerce plaintiff into agreeing to the unionization of its works. The system of employment at the Eagle Glass Co. factory was precisely the same as that at the Hitchman mine. The written contract of employment inaugurated at the Eagle Glass Works more than a month prior to the filing of the bill in this case followed precisely the form established at the Hitchman mine shortly after the filing of the bill in that case. And the activities of Gillooly among the plaintiff's employees, and the motive and purpose behind these activities, as alleged in the bill, show the same elements of illegality to which we have called attention in our opinion in the *Hitchman Case.* Plaintiff is entitled to an opportunity, on final hearing, to prove these allegations as against those defendants who are within the jurisdiction of the court, and to connect them with the activities of Gillooly.

The decree of the Circuit Court of Appeals, so far as it directed that the temporary injunction be dissolved will be affirmed, but so far as it directed a dismissal of the bill it must be reversed, and the cause will be remanded to the District Court for further proceedings in conformity to this opinion.

*Decree reversed.*

MR. JUSTICE BRANDEIS, dissenting.

This suit was commenced July 28, 1913, in the District Court of the United States for the Northern District of West Virginia. The plaintiff, the Eagle Glass and Manufacturing Company is a West Virginia corporation having its principal place of business in that State. The defendants, Rowe and four others, were then the chief executive officers of the American Flint Glass Workers' Union. The defendants were sued individually and as such officers. Jurisdiction was rested wholly on diversity of citizenship, defendants being alleged to be all citizens of Ohio.

Plaintiff's factory was run as a non-union shop under individual agreements with its employees by which each was required, as a condition of employment, to sign an agreement that he would withdraw from plaintiff's employment if he joined the union. The employment was terminable at the will of either party. The bill alleged that defendants were conspiring to unionize its factory, and prayed that they, their agents and associates be enjoined from interfering with plaintiff's employees "for the purpose of unionizing your orator's glass factory without your orator's consent." District Judge Dayton granted a sweeping restraining order, which enjoined defendants, among other things, from picketing "for the purpose of interviewing or talking to any person or persons on said railroad or street cars coming to or near plaintiff's glass factory to accept employment with plaintiff, for the purpose . . . of inducing . . . them by . . . persuasion . . . to refuse or fail to accept service with plaintiff" and from the use of "persuasion or entreaty" to induce any person in its employ to leave the same.

Only one of the five defendants named in the bill was served with process. He, Gillooly, filed an answer alleging that he was a citizen and resident of West Virginia; and

a hearing was had upon the issue thus raised. The court, being satisfied that Gillooly was a citizen of West Virginia, ordered, on August 13, 1913, that the bill be dismissed as to him "without prejudice"; and directed that the bill be retained as to all other defendants named therein. Plaintiff then moved for a temporary injunction. But the counsel who had formerly represented Gillooly called the attention of the court to the fact that there was then before the court no person against whom an injunction could issue, since he had entered his appearance only for Gillooly and did not intend to appear for the other defendants who had not been served. He accordingly moved, on his own behalf, that the record be corrected. This motion was heard October 27, 1913, was taken under advisement and was granted on January 17, 1914. But meanwhile, on November 27, 1913, the District Judge granted plaintiff leave to amend its bill by adding as defendants eight other citizens of Ohio who, it alleged, were members of the American Flint Glass Workers' Union and "have assisted and are now supporting" the five persons originally named as defendants.

The eight members of the union, so joined as defendants by the amended bill, being served with process within the State of West Virginia, filed on January 14, 1914, their sworn answers to the bill, alleging among other things:

"Fourth. These respondents admit that they are members of a local union of glass workers at Steubenville, Ohio, which local union is affiliated with the American Flint Glass Workers' Union, and that, except their relation as members of their local union, they have no connection or relation whatever with the other defendants, that they are not officers, agents, representatives or organizers of their local union, or of the American Flint Glass Workers' Union, and that even in their capacity as members of their local union they have not by any act, word, or deed of

theirs in any manner, authorized, assisted, aided or abetted or encouraged any of the other defendants in doing any of the things alleged against them, (the other defendants) in the bill of complaint or the amended bill of complaint."

The allegation in the answer was supported by further affidavits of the parties, which were uncontradicted. The District Court, nevertheless, granted on January 17th, 1914, a temporary injunction against all the then defendants (including these eight) substantially in the terms of the restraining order.

On January 30, 1914, the eight took an appeal to the Circuit Court of Appeals, assigning as errors, among others:

"3. The court had no jurisdiction to grant an injunction because there was no service of process on any of the parties named as defendants except on these defendants, and the record shows that they are not really defendants, but are named as defendants merely as a pretext resorted to by the plaintiff in order to get jurisdiction.

"4. Because the temporary injunction is granted against these defendants on the sole ground that they are members of the union named in the bill."

On January 13, 1915, the Circuit Court of Appeals unanimously reversed the decree of the District Court with directions to dissolve the injunction and dismiss the bill, (219 Fed. Rep. 719), saying, among other things:

"Rowe and others, general officers of the Union, were not served, and, therefore, no relief could be given against them, unless it could be said they were brought before the court by representation when Glasstetter and others, mere members of the local union, were ordered to be made parties and appeared. . . .

"When the allegation of a general or common interest to many persons is denied, the duty devolves on the court to determine whether the common or general interest exists before decreeing against those who are alleged to be in

court by representation. The plaintiff had no pretense of a case against Glasstetter and the other defendants brought in by amendment for participating or aiding the defendants not served, in the alleged torts committed by them, and, therefore, there was no such common or general interest as authorized the court's decree against the defendants served, by virtue of the service and appearance of the defendants brought in by amendment."

Plaintiff took an appeal to this court, and also filed a petition for writ of certiorari. The decision upon the petition was postponed.

It is clear that the appeal must be dismissed, as the jurisdiction of the District Court rests wholly upon diversity of citizenship. *Hitchman Coal & Coke Co.* v. *Mitchell*, 241 U. S. 644. The petition for certiorari having been granted, the decree should, in my opinion, be affirmed for the reasons stated by the Circuit Court of Appeals and in the dissent in *Hitchman Coal & Coke Co.* v. *Mitchell*, *ante*, 229.

MR. JUSTICE HOLMES and MR. JUSTICE CLARKE concur in this dissent.