## CHARLESTON DRY DOCK & MACHINE CO. v. O'ROURKE et al.

(District Court, E. D. South Carolina, at Charleston. August 11, 1921.)

1. **Injunction ⬦101(3), 146—Employer held entitled to preliminary injunction to restrain unlawful interference by striking employees, notwithstanding denial of unlawful acts; Clayton Act does not forbid injunction against unlawful acts.**

   In a suit by a dry dock company, employing a large number of workmen, against officers and members of unincorporated organizations of striking employees, where, though such acts were denied or disclaimed by defendants, the showing made established that as a direct consequence of the strike and in pursuance of the intentions, threats, and acts of defendants, property of complainant had been destroyed and injured, and certain of its employees had been intimidated, assaulted, and beaten, complainant *held* entitled to a preliminary injunction to restrain such unlawful acts in the future; for the Clayton Act does not prohibit injunction against striking employees in cases where unlawful intimidation or other unlawful acts exist.

2. **Injunction ⬦102—Threatened invasion of private rights, though by a criminal act, may be enjoined.**

   The fact that a threatened invasion of a complainant's rights will constitute at the same time an offense against the criminal laws is no bar to relief by injunction at the instance of a private party.

In Equity. Suit by the Charleston Dry Dock & Machine Company against J. R. O'Rourke and others. On motion for preliminary injunction. Granted.

Moffett & Hyde and Paul M. MacMillan, all of Charleston, S. C., for complainant.

Jos. A. Patla, of Charleston, S. C., for defendants Doar and Clair.
H. L. Erckmann, of Charleston, S. C., for all other defendants.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SMITH, District Judge. This is a motion for a temporary injunction, of which due notice has been given, and counsel for all parties to the cause have appeared and been heard. The motion has been made upon the bill of complaint and the affidavits thereto annexed and the affidavits filed on behalf of the defendants.

The bill of complaint alleges that the complainant is a citizen of the state of Delaware, engaged in the operation of a large dry dock and shipbuilding plant in the city of Charleston, in the operation of which it has invested as the value of its plant a sum exceeding $1,250,000, and that the defendants are all citizens of the state of South Carolina and are members of three associations, viz., International Association of Machinists, Local No. 183, International Brotherhood of Boilermakers and Iron Shipbuilders, Local No. 50, and the International Brotherhood of Blacksmiths and Helpers, Local No. 454, all of which are unincorporated associations, and that the defendants were in the employ of the complainant in the operation of its plant and the carrying on of its work up to July 15, 1921; that on the 15th of July, 1921, the defendants, together with others constituting a majority of the employees of the complainant, left the employ of the complainant, or, in common parlance, "went on strike," and made certain demands as a condition of their return to work. The complainant refused to agree to all those demands, and thereupon the defendants placed pickets around the property of the complainant and carried on a systematic course of intimidation over the other workmen of the complainant, for the purpose of preventing any workers remaining in complainant's employ, and of rendering it impossible for complainant to carry on its work; that their attitude has not simply been that of peaceful persuasion, but they have assumed a hostile and assaulting attitude towards the complainant's workmen, actually assaulting and beating and inflicting bodily injuries upon some of them, and indulging in threats of injuries and battery upon others if they continued to work; that all this has been the result of a conspiracy between the defendants and their confederates and associates, to prevent the complainant obtaining workmen, and to inflict injury upon it, so as to compel it to accede to the demands of the defendants.

[1] The defendants submit an affidavit denying that they have exercised or contemplated any violence. They admit that they did leave the employ of the complainant and made certain demands and conditions, to be acceded to by complainant before they would return to work. They deny any intention to use violence, and insist that they desire only to conduct their strike in an orderly and peaceful fashion, using peaceful and persuasive methods. A consideration of all the affidavits, however, satisfies this court that the condition of affairs complained of in the bill is a direct sequence of the differences between the complainant and its workmen, and of the strike initiated and conducted by the defendants, or a great many of them, with others. In no other way can the acts of violence narrated in the affidavits or the injuries done to the plant and property of the complainant be accounted for. While it may be impossible to identify any particular

individual as the one who shot out the lights, or committed the other acts against the property of the complainant, calculated to injure its property and harass and obstruct it in its operations, yet it is manifest that these acts, as well as the acts of violence upon the persons of its employees and the threats extended to them, are the sequence of the strike and are in pursuance of the intentions, threats, and acts of the defendants.

The fundamental basis of this free government is that its citizens shall be free—free to own their own property, and perform their own tasks, and follow their own lives, in pursuit of their own happiness, as each sees fit, provided only that the laws of the republic are observed. The moment any number of citizens, relying on greater physical strength, assume to themselves, by violence or intimidation, to prevent another citizen from exercising his legal rights, or by unlawful coercion, inducement, or persuasion attempt to put an end to the freedom of another citizen, by depriving him of the power to use his own labor and enjoy his own property as allowed by law, at that moment the ordered freedom of the republic is destroyed and the despotism of a lawless mob substituted.

The difference between a mob of lynchers, who put a helpless captive to death without trial, and a mob of so-called strikers, who beat a helpless fellow workman because he differs from them in opinion as to how he shall exercise his undoubted legal rights, is one of degree, and not of kind. In either case, it is an essential law of a free people that is violated. Nothing may be more base and cowardly than the assault of a number, relying on the strength of their numbers, upon an unprotected individual, whose helplessness is taken advantage of to compel him, by physical maltreatment, to yield up his legal rights, unless it be the willful failure of the guardians of the peace to afford protection to the weak, or of the courts to award the shield of the law's enforcement.

[2] Whatever may have been supposed to be the ancient rule that an injunction could not issue from a court of equity to restrain the commission of a crime, it may be regarded as settled in this country, since the decision in the case of In re Debs, 158 U. S. 564, 593, 15 Sup. Ct. 900, 39 L. Ed. 1092, that the fact that the threatened invasion of plaintiff's rights will amount at the same time to an offense against the criminal laws is no bar to relief by injunction at the instance of a private party.

In the case of Hitchman Coal & Coke Co. v. Mitchell, 245 U. S., 229, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461, the Supreme Court of the United States has held that the act of any one intending to do that which is calculated in the ordinary course of events to damage, and which does in fact damage any person in his property or trade, is malicious in law and actionable, if done without just cause or excuse, and an injunction will lie from a court of equity to prevent the act, and the same principle is affirmed in the case of Eagle Glass & Mfg. Co. v. Rowe, 245 U. S. 275, 38 Sup. Ct. 80, 62 L. Ed. 286.

The statute of Congress enacted October 15, 1914, generally called the "Clayton Act" (38 Stat. 730), does not prohibit injunctions in cases such as the present, where unlawful intimidation or other unlawful acts exist. Application of that act is clearly stated by the Circuit Court of Appeals for the Sixth Circuit, in King et al. v. Weiss & Lesh Mfg. Co. (C. C. A.) 266 Fed. 257.

The three associations named are all unincorporated associations. An injunction, which means punishment for disobedience, cannot issue against a nonexistent legal entity, such as an unincorporated association. As in the case of a copartnership, the writ is to the members as individuals. Where they act as an association, that is but evidence of the joint as well as the individual action of the parties. If it be so, as claimed by some defendants, that the acts complained of were done without their knowledge, then no harm will be done by an injunction against doing what they do not claim a right to do.

It is therefore ordered and adjudged that the complainant is entitled to a temporary injunction in this case, enjoining the defendants and each and every of them, and all persons knowingly acting with knowledge of this order, until the further order of the court, from:

(1) Interfering or attempting to interfere, by violence, threat, assault, or intimidation, with complainant's employees, or any of them, for the purpose of causing or inducing any of complainant's employees to quit his employment or cease work at complainant's plant.

(2) Interfering or attempting to interfere with complainant's employees without complainant's consent, and for the purpose of knowingly and willfully bringing about the breaking, by complainant's employees, of their contracts of service and leaving its employment.

(3) Knowingly and willfully persuading, inducing, or violently causing complainant's employees, present or future, to leave complainant's service, and especially from knowingly and willfully inducing, persuading, or forcing, or compelling by threats or other intimidation, such employees, present or future, to leave complainant's service without complainant's consent.

(4) Trespassing on or entering upon the grounds or premises of complainant for the purpose of interfering therewith, or hindering or obstructing its business, or with the purpose of compelling or inducing by threats, intimidation, violence, or abusive language or persuasion, any of complainant's employees to refuse or fail to perform their duties as such.

(5) Compelling or inducing, or attempting to compel or induce, by threats, intimidation, or violence, or abusive language, any of complainant's employees to leave its service, or fail or refuse to perform their duties as such employees, or compelling or attempting to compel by like means any person, desiring to seek employment from complainant, from so accepting such employment.

(6) From assembling about or picketing the shop or place of business of the complainant under such circumstances or in such numbers as to menace the peace or produce intimidation by reason of the very fact of numbers.

A writ of temporary injunction will issue, enjoining the defendants and each and every of them, and all other persons acting with knowledge of this order, according to the terms of this order. It is further ordered that the complainant do within five days file its bond in this court, with surety to be approved by the judge of the court, or, in his absence, by the clerk thereof, to the defendants in the sum of $5,000, conditioned for the payment of all such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained hereby.