## BITTNER et al. v. WEST VIRGINIA–PITTSBURGH COAL CO.

(Circuit Court of Appeals, Fourth Circuit. October 29, 1926.)

No. 2409.

**1. Judgment ⚖585(5).**

Injunction against officers of labor union, with subsequent contempt proceedings, *held* not res judicata in proceedings for injunction 12 years later, involving different state of facts, although referring to same subject-matter.

**2. Judgment ⚖585(5).**

Officers of labor union are not bound by decree of injunction issued 12 years previously against their predecessors in office and determining rights of parties as of that time.

**3. Judgment ⚖585(5).**

Acquittal of labor union officers in contempt proceedings instituted against them for alleged violations of former injunction order does not affect complainant's right to later injunction on different set of facts.

**4. Courts ⚖314.**

Federal court had jurisdiction of injunction proceeding by West Virginia corporation against labor union officers who were citizens of Pennsylvania and Ohio.

**5. Injunction ⚖101(3).**

Under Clayton Act, § 20 (Comp. St. § 1243d), injunctive relief in case of labor disturbances will not be denied because acts do not constitute public disorder or threatened violence.

**6. Trade unions ⚖9.**

Equity will grant relief for fraud and deception pursued by labor union to undermine and destroy employers' rights.

**7. Appeal and error ⚖954(4).**

Decree creating temporary injunction and refusing to dissolve it will not be disturbed on appeal, in absence of showing of improper exercise of discretion by trial court.

**8. Injunction ⚖158, 176.**

Injunction against labor union officials *held* not to prohibit use of lawful propaganda to increase their membership, but nevertheless modified to preclude other construction.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Wheeling; William E. Baker, Judge.

Suit by the West Virginia–Pittsburgh Coal Company against Van A. Bittner and others. From a decree denying a motion to dismiss a preliminary injunction theretofore granted, and modifying it, defendants appeal. Decree modified.

See, also (C. C. A.) 11 F.(2d) 93.

This is an appeal from an order of the 2d of June, 1925, granting a modified injunction, and refusing to dissolve the injunction so modified. The bill of complaint was filed on the 11th of May, 1925, by the West Virginia-Pittsburgh Coal Company, a corporation, the appellee herein, against a number of individuals, as such and as officers of the United Mine Workers of America, and various sub-branches of that organization. Service of process was had upon the appellants Van A. Bittner, William Roy, Frank Ledvinka, John Cinque, William T. Roberts, and Joseph Angelo.

The bill sets forth various properties of the complainant company, the nature and character of its business, viz. mining and producing coal; that the Lewis Findley Coal Company, complainant's predecessor and owner of these properties, had run the mines on a nonunion basis, and that each miner employed by said company entered into a contract whereby it was mutually agreed that the said mines should be nonunion mines, and that said employé should not join or become in any way affiliated with any union of coal miners while in such employment; that after complainant acquired said properties, this condition was continued.

The bill stated in considerable detail various efforts of the United Mine Workers of America to unionize the mines of the complainant, and sundry acts of intimidation and violence were specified. The bill also alleged that from the year 1917 until the 2d of January, 1922, it operated its mines on a union basis; that from January 2, 1922, they were operated on a nonunion basis; that upon complainant's attempting to operate the mines on a nonunion basis in January, 1922, a vigorous effort was made by the United Mine Workers of America to unionize the mines. Resort was had to threats, intimidation, force, violence, assault, beating and shooting of the employés of the complainant, as well as the wanton destruction of complainant's property. Complainant caused to be instituted contempt proceedings to prevent interference with the use and operation of the mines under the injunction theretofore awarded against the United Mine Workers of America, and as a result of this action, by understanding of the parties, the interruption in the use of complainant's property was for a while, and until about the 1st of March, 1925, discontinued.

The complainant further alleged that on or about the 1st of March, 1925, the defendants as individuals and as officers of the United Mine Workers of America, and the various subdivisions thereof, did combine, conspire, and confederate together for the purpose of unionizing all of the nonunion mines in northern West Virginia, including the mines of the complainant, and during the month of April, and to the date of filing complainant's bill on the 11th of May, 1925, did induce, entice, and persuade a great number of complainant's employés to break their contracts of service and cease working for the complainant and agree to join the United Mine Workers of America; that said defendants then well knew that the mines of complainant from January, 1922, had been operated as nonunion mines, and that complainant's employés were working under contracts of service, a copy of one of which contracts is set forth in paragraph 5 of the bill.

In paragraphs 9 to 26, inclusive, of said bill, are set forth the various efforts and acts alleged to have been instigated and done by the defendants for the purpose of unionizing complainant's mines. Many of these acts consisted in picketing complainant's premises; in intercepting complainant's employés on their way to work, and inducing them not to work; in intercepting others who were seeking employment with the complainant and inducing them not to work, or not to seek employment with the complainant; the circulating and posting up of inflammatory statements and posters; the gathering of large numbers at the mines and openings of the complainant's coal mines, and making various demonstrations—all calculated to intimidate the employés of the complainant.

In paragraph 27 of the bill complainant charges that the defendants resorted to deceit in the furtherance of their plan to unionize their mines by means of inducement, entreaty, persuasion, threats, menaces, and intimidation, inducing some 200 of complainant's employés to absent themselves from work and join a local union, when formed, of the United Mine Workers of America; that the names of the employés thus persuaded were kept secret from complainant; and that this action on the part of the defendants occurred at its Gilcrest mines and its Locust Grove mines, with the result, as charged in paragraphs 28, 29, 30 and 31 of complainant's bill, that its employés, who were on the 1st of April, 1925, satisfied and contented with their contracts with the complainant, were terrorized by apprehension of strikes, resulting in force, violence, shooting, and rioting, and destruction of property, and complainant's Locust Grove mines were forced to procure coal from other sources, to complete its contracts with its customers; that at this time complainant was paying wages to its employés higher than those paid union labor; that during this entire period of March, April, and May, covering the efforts of the defendants to unionize complainant's mines, the defendants knew of the contractual relations existing between the complainant and its employés. Complainant thereupon, in its bill, prayed for eight specific grounds of relief, and for general relief.

On the 16th of May the defendants tendered a written motion to dismiss the bill, and on that day the case came on to be heard on the complainant's prayer for a preliminary injunction and the defendant's motion to dismiss, which latter motion the defendant first made, and asked leave to withdraw its motion and subsequently renew it; and the cause was duly submitted upon the matters arising on complainant's motion for a preliminary injunction, and the application to dismiss as aforesaid.

On the 19th of May, 1925, the court awarded the preliminary injunction, which injunction contained seven paragraphs, as follows:

"(1) From interfering or attempting to interfere with plaintiff's employés for the purpose of unionizing plaintiff's mines without its consent, by representing or causing to be represented to any of plaintiff's employés, or to any person who might become an employé of plaintiff, that such person will suffer or is likely to suffer some loss or trouble in continuing in or entering the employment of the plaintiff, by reason of plaintiff not recognizing the union, or because plaintiff runs a nonunion mine;

"(2) From interfering or attempting to interfere with plaintiff's employés for the purpose of unionizing the mines without the plaintiff's consent, and in aid of such purpose knowingly and willfully bringing about the breaking by plaintiff's employés of contracts of service known at the time to exist with plaintiff's present and future employés;

"(3) From knowingly and willfully enticing plaintiff's employés, present or future, to leave plaintiff's service on the ground that the plaintiff does not recognize the United Mine Workers of America or runs a nonunion mine;

"(4) From interfering or attempting to interfere with plaintiff's employés, so as to knowingly and willfully bring about the

breaking by plaintiff's employés, present and future, of their contracts of service known to the defendants to exist, and especially from knowingly and willfully enticing such employés, present or future, to leave plaintiff's service without plaintiff's consent;

"(5) From trespassing on or entering upon the grounds and premises of plaintiff or its mines for the purpose of interfering therewith or hindering.. or obstructing its business, or with the purpose of compelling or inducing, by threats, intimidation, violent or abusive language, or persuasion, any of plaintiff's employés to refuse or fail to perform their duties as such;

"(6) From compelling or inducing, or attempting to compel or induce, by threats, intimidation, or abusive or violent language, any of plaintiff's employés to leave its service, or fail or refuse to perform their duties as such employés, or compelling or attempting to compel by like means any person desiring to seek employment in plaintiff's mines and works from so accepting employment therein;

"(7) From picketing the streets, roads, or other avenues of approach to plaintiff's mines, for the purpose of enticing, entreating, persuading, or by any means inducing plaintiff's employés to break their contracts of service known to them at the time to exist; from approaching plaintiff's employés, present or future, at their places of residence or at any other place for the purpose, of enticing, entreating, persuading, or by any means inducing said employés to break their contracts of service known to them at the time to exist; from advertising meetings or by any means inducing plaintiff's employés to attend meetings at which attempts shall be made, by entreaty, enticement, or persuasion, to induce plaintiff's employés to break their contracts of service then known to them to exist; and from doing the like for the purpose of unionizing plaintiff's mines."

On the same day, May 19th, the defendant filed a written motion to dissolve the injunction, which motion was heard on June 1st, the defendants having meantime, on May 22d, filed their answer to the bill; and on June 2d the District Court filed its opinion denying the motion to dissolve, and entered its decree modifying the preliminary injunction by omitting the seventh paragraph thereof as aforesaid. .

Henry Warrum, of Indianapolis, Ind. (T. C. Townsend, of Charleston, W. Va., on the brief), for appellants.

John A. Howard, of Wheeling, W. Va.

(Wm. C. Howard and J. M. Ritz, both of Wheeling, W. Va., on the brief), for appellee.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

WADDILL, Circuit Judge (after stating the facts as above). The sequence of the various steps in the suits are: (1) Filing of the bill of May 11, 1925; (2) motion to dismiss, made May 15, 1925; (3) awarding the preliminary injunction on May 19, 1925; (4) motion to dissolve the preliminary injunction on May 19, 1925; (5) answer of the defendants filed May 22, 1925; and (6) the action of the court on the motion to dissolve the injunction, and entering the decree denying the same, filed June 2, 1925.

Four grounds are assigned, and especially insisted upon, for reversing the decree of the District Court, namely: First, that under the doctrine of res adjudicata, the complainant is not entitled as against the defendants to the relief prayed for in the bill; second, that the court is without jurisdiction to afford the relief sought; third, that the decree asked for would be violative of the law; and, fourth, that the granting of the same would create an unconscionable situation, whereby the United Mine Workers of America would be entirely denied the right of having their side of the controversy heard. [1] The doctrine of res adjudicata, sought to be invoked, is predicated alone upon the fact that heretofore the litigation in question has been fully heard and determined adversely to the complainant, and that the same cannot be reopened and heard anew in this proceeding. Briefly, the defendants' position is that on the 2d of December, 1913, complainant, in its bill in equity against John P. White and the defendant Van A. Bittner, and others, procured an injunction seeking to secure relief of the character herein asked, which injunction, however, was modified, pursuant to a decree of the Circuit Court of Appeals for this circuit, on the 3d day of July, 1914, and on the 10th of July, 1923, the injunction in its modified form was made permanent, and that in addition a contempt proceeding was duly instituted by the complainant in that cause, seeking to secure the benefits of the injunction proceeding.

The contempt proceedings in this cause were dismissed, and the original injunction, as modified by the Circuit Court of Appeals, was attempted to be enforced; but. upon consideration of the application herein for injunction, and in the light of the disposition of the contempt proceedings favorably to the

defendants, the temporary injunction of the 19th of May, 1925, was modified by the omission of the seventh paragraph thereof, which resulted, in effect, in the reinstatement of the original injunction of the 2d of December, 1913. This whole theory of the doctrine of res adjudicata as applicable to the present case is predicated upon the fact that what was done in the first case was dependent upon the same facts as those here involved. This is by no means true. The cases depend entirely upon a different state of facts, though they refer to the same general subject-matter.

The first original injunction suit against White and Van Bittner involved many of the legal questions that arise here, and the dismissal of the defendants in the contempt proceeding was because it was held that they had not violated the injunction order in the first case. But, further than that, what was done either in equity or under the contempt proceeding should not control in the determination of the action to be taken here. More than 12 years have elapsed since the suit in the White case was instituted, since which time, certainly for the period covering from 1917 to the 2d of January, 1922, some five years afterwards, the complainant's mines were operated on the union basis, and hence the facts controlling this situation depend upon what occurred on and after the 1st of March, 1925, indeed, if not since 1922, when complainant again attempted to operate its mines as nonunion mines.

The facts as to what occurred in reference to the original injunction have no material bearing here. On the contrary, the condition prevailing and what occurred after the effort to operate the complainant's mines upon the original plan of nonunion mines should control. The authorities are quite clear as to this question, and the effect of new litigation of this character, and when it is sought to use or avail of what occurred in the first suit as an estoppel in the new, it is entirely manifest that in such cases we must necessarily determine what was the cause actually litigated and determined in the original suit.

"If it is doubtful whether a second suit is for the same cause of action as the first, it has been said to be a proper test to consider whether the same evidence would sustain both. If the same evidence would sustain both, the two actions are considered the same, and the judgment in the former is a bar to the subsequent action, although the two actions are different in form. If, however, different proofs would be required to sustain the two actions, a judgment in one is no bar to the other. It has been said that this method is the best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties, and it has even been designated as infallible. Sometimes the rule is stated in the form that the test of the identity of causes of action for the purpose of determining the question of res judicata is the identity of the facts essential to their maintenance." 15 R. C. L. topic "Judgments," § 439.

"Where, however, the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action. In order that a judgment may operate as a bar to the prosecution of a second action and conclude parties and privies as to all matters which might have been litigated in the first action, there must be identity of the subject-matter of the suit, of the cause of action, of the persons and parties, and of the capacity in which the parties appear as litigants, or as it is sometimes expressed, identity of the quality in the persons for or against whom the claim is made." 15 R. C. L. supra, § 429.

"It is not the mere recovery in a prior action that constitutes the bar or estoppel, but the decision upon the merits of the question in dispute between the parties, and in order to be conclusive as an estoppel, or as a bar under the doctrine of res judicata, the general rule is that a judgment must have been rendered on the merits of the case." 15 R. C. L. supra, § 431.

"But when after the entry of a judgment subsequent events transpire creating a new legal situation, the judgment may no longer act as an estoppel to prevent a new suit." R. C. L. supra, § 437, p. 962.

The case of Tosh and Others v. West Kentucky Coal Co., 252 F. 44, 164 C. C. A. 156, 15 A. L. R. 376, a decision of the Circuit Court of Appeals for the Sixth Circuit, will be found of special interest. There the

West Kentucky Coal Company filed a bill in equity during a strike affecting its employés and its mining business, in an attempt to unionize its mines. In November, 1907, a final decree was entered enjoining the defendants and all others associated with them, and all persons whatsoever who had acquired notice, information, or knowledge of the decree, from in any manner interfering with or molesting, hindering, obstructing, or stopping any of the business of the complainant, or its agents, servants, and employés, in the operation of its business at any of its mines, or upon any of its property. On the 2d of June, 1917, the coal company instituted contempt proceedings against the defendants, and upon trial by jury they were convicted of contempt of court for violating the injunction, and were sentenced to terms of imprisonment. Upon a writ of error brought to review and reverse the conviction, the court on page 48 (164 C. C. A. 160) said:

"Does it appear that the condition existing in 1917, when the alleged violation of the injunction was committed, was in substance the strike of 1907, or that plaintiffs in error were so far associated with, or so far represented, the defendants in the injunctional decree, as to make them amenable to it by reason of their acts in 1917? We find nothing in either allegations or proofs indicating that the strike of 1907, or the interference with the business of complainant which formed the basis of the injunction, had continued subsequent to the decree made in that year, or that the conditions existing in 1917 were anything more than a new and independent effort to unionize the mines. The most which can be said is that there was danger of a strike or of serious troubles if agitation was permitted, or interference with the company's employés tolerated, and that the issue of union or nonunion mine was the same in 1917 as it had been in 1907."

Again, on page 50 of the same case (164 C. C. A. 162), the court said:

"The conviction of plaintiffs in error by the jury was made to depend solely upon their making the threats or committing the acts of violence charged against them, with knowledge that the employé so threatened or subjected to violence was in the company's service or employment, and with intent to prevent such employé from continuing therein or from performing his services in such employment, as the case may be. If the injunction of 1907 is of its own force applicable to new conditions in 1917, no reason appears why it would not be applicable to conditions 20 years, or even 30 years, after the

decree is entered, provided the union which was back of the attempted unionizing of the mines in 1907, out of which the injunction grew, was also back of the new and independent attempt to unionize the mines 20 or 30 years later. Under such circumstances the recognition of the power of summary prosecution for contempt, without previous adjudication that the existing conditions are such as to justify injunction, especially where the remedy is sought to be exercised, not through the public officers, but by the employer alone, and primarily on behalf of its private interests, is fraught with great possibilities for oppression."

Paragraph 3 of the syllabus of the said case is as follows:

"A decree in a strike suit enjoining defendants 'and all other persons whatsoever who may have acquired notice, information, or knowledge of this judgment' from interfering by threats, violence, or intimidation with complainant's employés binds persons having notice who, although not parties, were in privity with the defendants, but persons not parties nor privies, who ten years later took part in another and unrelated strike as members of the same labor union are not amenable to such decree, although served with notice."

[2] In the present case, the injunction decree in the old suit was entered in 1913, and had reference to conditions existing then, as alleged in the bill of complaint; and the evidence was to prove the then existing conditions. The decree in that case referred to and determined the rights of the parties as of that time, and held that the acts done at that time were in violation of the then rights of the parties. The final decree, it is true, was entered in July, 1923, in the suit brought in 1913, and the 1913 decree could only have been supported by proof of the allegations of the bill filed at that time. Van A. Bittner is the only party to the present suit who was a party to the 1913 suit, and the defendants in this suit, who were officers of the United Mine Workers of America, because of that fact, and not in privity with different individuals who were their predecessors in office in 1913, are not bound by the decree in that suit.

The bill in this case charges that about the 1st of March, 1925, the defendants and each of them did conspire and confederate together for the purpose of unionizing all of the nonunion mines of northern West Virginia, and in furtherance of that conspiracy did, during the month of April, 1925, entreat, entice, and persuade a great number of

complainant's employés to break their contracts of service hereinbefore mentioned; they, the defendants, well knowing at the time that complainant's mines were being operated on a nonunion basis, and under contract as aforesaid with its employés to that end.

[3] The defendants, it is true, were acquitted in the contempt proceedings instituted against them for alleged violations of the injunction order of 1913. This, however, in no way affects complainant's right to the injunction prayed for, as the alleged contempt related to the old case, and not to this.

[4] Appellants question the jurisdiction of the court to hear and determine the issues raised by the pleadings. Upon what theory this contention can be made successfully is difficult to perceive, as it seems manifest that the court is clothed with full power, authority, and jurisdiction, as well of the subject-matter as of the parties to the litigation. The general purpose of the suit is to preserve and protect to complainant its lawful right to use and enjoy its property. It is the undisputed owner of valuable coal properties, particularly the three large coal-mining properties described in the bill and located in the state of West Virginia, in the Northern judicial district of that state. The mines are operated by complainant in the production of coal therefrom, which is sold for use within and without the state; the mines being operated on what is known as the nonunion basis.

The grievances of the complainant, as averred, are that the appellants upon whom service of process was duly made, as well individually as officers and agents of the United Mine Workers of America, have set about and combined and confederated among themselves and with others to forcibly unionize complainant's mines, which would tend to destroy the value of the same, and make impossible the profitable production of coal; that complainant operated its said mines under written contracts with its employés, one of the provisions of which was that they would not, while in complainant's employ, join or become members of the United Mine Workers of America without its knowledge, and that, if they did so, they would leave the employ of complainant; that this method of operating its mines, and the rights and benefits accruing to complainant under its contracts of employment with its employés, was a most valuable property right, which enabled it to successfully conduct its business, and particularly to maintain the number of

15 F.(2d)—42

employés necessary to carry on its business, and without which it could not have done so, and to avoid strikes and such incidental interruptions as would result in the practical destruction of its business and property, and its right to use and enjoy the same; that defendants well knew of complainant's contracts with its employés, and the terms and conditions of the same, and of the value of such contracts, but nevertheless willfully and maliciously, and with the purpose of and intending to break up and destroy complainant's business, deliberately set about to induce and secretly persuade complainant's employés and workmen to break their contracts by becoming members of the United Mine Workers of America, and keeping that fact away from the knowledge of complainant until, with such numbers, they could undermine and break up the complainant's business, all of which actions and doings were against good conscience and fair dealings.

The right to maintain the suit against appellants is clear. The complainant is a West Virginia corporation, and instituted this suit at its home in that state, and the appellants are citizens of the states of Pennsylvania and Ohio respectively, and were duly served with process in the state of West Virginia, which gave and conferred upon complainant in the state and district in which it resided, the right to maintain this litigation, certainly against the appellants herein individually, if not in their official capacities, as representing the labor unions to which they belonged, and for which they acted.

This case in its essential features is practically a counterpart of that of Hitchman Coal & Coke Co. v. Mitchell and Others, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461. In that case, as here, the right of injunction was involved and considered, growing out of an effort to unionize complainant's mines by peaceable and persuasive methods, fraudulently and deceptively practiced, in utter disregard of its rights and interests under the contractual relations with its employés, of which the defendants were fully advised.

In the Hitchman Case, supra, at page 250 (38 S. Ct. 72), Justice Pitney, speaking for the court, said:

"That the plaintiff was acting within its lawful rights in employing its men only upon terms of continuing nonmembership in the United Mine Workers of America is not open to question. Plaintiff's repeated costly experiences of strikes and other interferences while attempting to 'run union' were a

sufficient explanation of its resolve to run 'nonunion,' if any were needed. But neither explanation nor justification is needed. Whatever may be the advantages of 'collective bargaining,' it is not bargaining at all, in any just sense, unless it is voluntary on both sides. The same liberty which enables men to form unions, and through the union to enter into agreements with employers willing to agree, entitles other men to remain independent of the union and other employers to agree with them to employ no man who owes any allegiance or obligation to the union. In the latter case, as in the former, the parties are entitled to be protected by the law in the enjoyment of the benefits of any lawful agreement they may make. This court repeatedly has held that the employer is as free to make nonmembership in a union a condition of employment, as the working man is free to join the union, and that this is a part of the constitutional rights of personal liberty and private property, not to be taken away even by legislation, unless through some proper exercise of the paramount police power. Adair v. United States, 208 U. S. 161, 174 [28 S. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764]; Coppage v. Kansas, 236 U. S. 1, 14 [35 S. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960]. In the present case, needless to say, there is no act of legislation to which defendants may resort for justification."

And on page 259 (38 S. Ct. 75) the learned judge further said:

"Upon all the facts, we are constrained to hold that the purpose entertained by defendants to bring about a strike at plaintiff's mine in order to compel plaintiff, through fear of financial loss, to consent to the unionization of the mine as the lesser evil, was an unlawful purpose, and that the methods resorted to by Hughes—the inducing of employés to unite with the union in an effort to subvert the system of employment at the mine by concerted breaches of the contracts of employment known to be in force there, not to mention misrepresentation, deceptive statements, and threats of pecuniary loss communicated by Hughes to the men—were unlawful and malicious methods, and not to be justified as a fair exercise of the right to increase the membership of the union."

The case of Eagle Glass Manufacturing Co. v. Rowe, 245 U. S. 275, 38 S. Ct. 80, 62 L. Ed. 286, follows and approves the Hitchman Case cited, and it will be found on a fair consideration of the cases of Duplex Printing Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, and American Steel Foundries v. Tri-City Central Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360, that there is nothing in either case as contended for that modifies or militates against the views herein taken of the Hitchman Case, but, on the contrary, they sustain fully, so far as under their facts they are applicable to this case, the views we have taken.

In American Foundries v. Tri-City Central Council, supra, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360, Mr. Chief Justice Taft, speaking for the court, and considering the effect and meaning of the Hitchman Case, supra, on page 211 (42 S. Ct. 79), said:

"The counsel for the Steel Foundries rely on two cases in this court to support their contention. The first is that of Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229 [38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461]. The principle followed in the Hitchman Case cannot be invoked here. There the action was by a coal mining company of West Virginia against the officers of an international labor union and others to enjoin them from carrying out a plan to bring the employés of the complainant company and all the West Virginia mining companies into the international union, so that the union could control, through the union employés, the production and sale of coal in West Virginia, in competition with the mines of Ohio and other states. The plan thus projected was carried out in the case of the complainant company by the use of deception and misrepresentation with its nonunion employés, by seeking to induce such employés to become members of the union contrary to the express term of their contract of employment that they would not remain in complainant's employ if union men, and after enough such employés had been secretly secured, suddenly to declare a strike against complainant and to leave it in a helpless situation in which it would have to consent to be unionized. This court held that the purpose was not lawful, and that the means were not lawful and that the defendants were thus engaged in an unlawful conspiracy which should be enjoined. The unlawful and deceitful means used were quite enough to sustain the decision of the court without more."

[5] Our attention has been called to section 20 of the Clayton Act (Comp. St. § 1243d), as bearing upon the subject under consideration; but we are persuaded that that section has little or no application to this case, in the light of the interpretation placed

thereon by the Supreme Court in American Foundries Co. v. Tri-City Council, supra, 257 U. S. 184, 202, 42 S. Ct. 72, 76 (66 L. Ed. 189, 27 A. L. R. 360). At the latter page Mr. Chief Justice Taft, speaking for the court, said:

"It has been determined by this court that the irreparable injury to property or to a property right, in the first paragraph of section 20, includes injury to the business of an employer, and that the second paragraph applies only in cases growing out of a dispute concerning terms or conditions of employment, between an employer and employé, or between employers and employés, or between employés, or between persons employed and persons seeking employment, and not to such dispute between an employer and persons who are neither exemployés nor seeking employment."

Assuming that applications for injunction will ordinarily only be resorted to in cases of labor disturbances, because of public disorder or threatened violence, as distinguished from peaceful methods or lawful persuasion, still it cannot be believed that, in a case like the one under consideration, relief will be denied because the acts complained of are not of the former class.

[6] Where fraud and deception are openly charged in the methods adopted and practices pursued to undermine and destroy the complainant's rights, equity will not fail to afford the fullest relief. What is said by the court in the Hitchman Case, supra, can only admit of this meaning. The above quotations from the American Foundries Case, 257 U. S. 211, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360, supra, giving the Supreme Court's interpretation of the Hitchman Case, clearly so indicates, as does the language of the court at page 210 (42 S. Ct. 79), where the Chief Justice says: "There are other cases in which the persuasion was accompanied by the intent to secure a breach of contract, or was part of a secondary boycott, or had elements of fraud, misrepresentation, or intimidation in it."

Since the decision in the Hitchman Case, supra, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461, two Circuit Courts of Appeals have followed, reiterated, and applied the doctrine of that case in its full scope as applicable to cases like the present. Kinloch Telephone Co. v. Local Union No. 2, etc., 275 F. 241 (8th C. C. A.); Montgomery and Others v. Pacific Electric Ry. Co., 293 F. 680 (9th C. C. A.).

The third and fourth assignments, especially insisted upon by appellants, and hereinabove quoted as reasons for the reversal of the action of the court below, are too general in their nature to call for any special discussion by the court.

[7] This is an appeal from an order granting a temporary injunction and refusing to dissolve the same, and not a decision upon final hearing on the merits of the case. It appears that the court below in the action taken neither violated any rule of equity, nor improperly exercised the discretion reposed in it, and that the evidence entitled the complainant to injunctive relief, and that the action taken, save as hereinafter modified, is free from error. Meccano v. Wanamaker, 253 U. S. 136, 141, 40 S. Ct. 463, 64 L. Ed. 822; Amarillo v. Southwestern Tel., etc., Co. (C. C. A. 5th Cir.) 253 F. 638, 165 C. C. A. 264; National Picture Theatres v. Foundation Film Corp. (C. C. A. 2d Cir.) 266 F. 208; Gasaway v. Borderland Corp. (C. C. A. 7th Cir.) 278 F. 56.

[8] Defendants criticize the scope of the injunction, contending that its effect is to forbid the publishing and circulating of lawful arguments and the making of lawful speeches advocating membership in the union in the neighborhood of plaintiff's mines, but we do not think that this is the proper construction of the order, which is an exact copy of that which was approved by the Supreme Court of the United States in the Hitchman Coal Co. Case, supra. In view of what was said by that court in American Foundries Company v. Tri-City Council, there can be no doubt as to the right of defendants to use all lawful propaganda to increase their membership. See Gasaway v. Borderland Coal Co., supra. But, that there may be no misunderstanding in the matter, we think that the order should be modified by adding thereto the following provision:

"Provided, that nothing herein contained shall be construed to forbid the advocacy of union membership, in public speeches or by the publication or circulation of arguments, when such speeches or arguments are free from threats and other devices to intimidate, and from attempts to persuade the complainant's employés or any of them to violate their contracts with it."

The decree of the District Court will be modified, each side to pay one-half of the costs in this court.

Modified.