### WHITAKER et al. v. WHITAKER IRON CO. et al.*

(Circuit Court of Appeals, Fourth Circuit. February 5, 1918.)

#### No. 1551.

1. WILLS ☞860—TITLE AND RIGHTS OF LEGATEES—STOCKHOLDERS' SUIT—"DEVOLVE."

By his will a testator empowered his executors to convert all his property into cash at any time, except certain stock in a corporation, which they were to hold in trust for the benefit of his wife until her death, when it was to become a part of his residuary estate, which, after payment of special bequests, was to be equally divided between his children or their representatives, taking into account advances made them. *Held*, that the legatees did not by devolution take title to the stock on the death of the wife while it remained in the hands of the executors, who had power to sell the same, and that they could not maintain a stockholders' suit against the corporation and others (quoting Words and Phrases, Devolve).

2. CORPORATIONS ☞211(6)—STOCKHOLDERS' SUIT—SUFFICIENCY OF BILL.

A bill filed by complainants as stockholders against the corporation and others, considered in the light of the corporate records produced in response to complainants' prayer for discovery, *held* to state no cause of action.

3. CORPORATIONS ☞209—STOCKHOLDERS' SUIT—LACHES.

Minority stockholders, seeking redress for alleged fraud, must act promptly, and a bill filed at least 12 years after the transactions alleged to have been fraudulent, with no excuse given for the delay, shows such laches on its face as to warrant its dismissal.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Wheeling; Alston G. Dayton, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied May 7, 1918.

Suit in equity by Martha E. Whitaker, individually and as executrix of the will of Carrie C. Updegraff, deceased, and Ruth E. Whitaker, against the Whitaker Iron Company and others. From a decree dismissing the bill, complainants appeal. Affirmed.

For opinion below, see 238 Fed. 980.

Henry A. Brann, Jr., of New York City, for appellants.

John A. Howard, of Wheeling, W. Va. (George R. E. Gilchrist, of Wheeling, W. Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the Northern District of West Virginia. The facts upon which the decree is based are as follows:

In 1900, the Whitaker Iron Company acquired the Wheeling Corrugating Company for $250,000 in Whitaker Iron Company stock. In doing that two distinct methods were used; one by which the Wheeling Corrugating Company conveyed its property and assets to the Whitaker Iron Company, which assumed payment of the liabilities of the Wheeling Corrugating Company, and the other by which the individual stockholders of the Wheeling Corrugating Company assigned and delivered their stock to the Whitaker Iron Company and received in return $250,000 in Whitaker Iron Company stock. Thus the Whitaker Iron Company became the owner of all the property and assets as well as the entire capital stock of the Wheeling Corrugating Company.

From the time of that transfer in 1900 to near the close of 1904, the business of the Wheeling Corrugating Company was conducted by the Wheeling Corrugating Company in its own name as the business had theretofore been conducted; but its entire capital stock, consisting of 2,255 shares, was owned by the Whitaker Iron Company and voted at stockholders' meetings of the Wheeling Corrugating Company by the Whitaker Iron Company, except 6 shares, which by action of that company's board of directors September 26, 1900, were transferred to six different persons, so as to qualify them to serve as directors of the Wheeling Corrugating Company.

Toward the close of 1904, the Whitaker Iron Company, together with the Laughlin Nail Company, entered into an arrangement for the organization of the Whitaker-Glessner Company, whereby a certain plant of the Whitaker Iron Company, then an operating company in Wheeling, was to be transferred to the Whitaker-Glessner Company, and a certain other plant of the Laughlin Nail Company, then an operating company in Martins Ferry, Ohio, was to be transferred to the Whitaker-Glessner Company. In addition to its plant in Wheeling, the Whitaker Iron Company agreed to transfer to the Whitaker-Glessner Company 2,255 shares of the capital stock of the Wheeling Corrugating Company, and to sell to the Whitaker-Glessner Company the good will of the Wheeling Corrugating Company. At that time the Whitaker Iron Company was the owner of all of the capital stock of

the Wheeling Corrugating Company, aside from the 6 qualifying shares mentioned, and also held the legal title to all the property and assets of the Wheeling Corrugating Company.

When this property came to be appraised by the interests of the Laughlin Nail Company, the other party to the formation of the Whitaker-Glessner Company, it was noticed that the Wheeling Corrugating Company had divested itself of all its property and assets by its transfer to the Whitaker Iron Company in 1900, but that the Whitaker Iron Company was also the holder of all of the capital stock of the Wheeling Corrugating Company. Thereupon, to give to the 2,255 shares of Wheeling Corrugating Company stock the value of $1,322,-900.79, and its good will the value of $255,200, at which they were being sold to the Whitaker-Glessner Company by the Whitaker Iron Company, the Whitaker Iron Company and the Wheeling Corrugating Company, by unanimous vote of their stockholders and by action of their respective boards of directors, rescinded the action whereby the Wheeling Corrugating Company conveyed its property and assets to the Whitaker Iron Company, as was done in 1900; but the acquisition of the capital stock of the Wheeling Corrugating Company by the Whitaker Iron Company in 1900, as the other method adopted to acquire the Wheeling Corrugating Company, was ratified and confirmed; and, following such corporate action in 1904 by the two corporations interested, the Whitaker Iron Company conveyed, and the Wheeling Corrugating Company received back, the same property that had been conveyed in 1900.

From the time in 1900 when the Whitaker Iron Company bought the Wheeling Corrugating Company for $250,000 in Whitaker Iron Company stock to the time in 1904 when the Whitaker Iron Company made the reconveyance to the Wheeling Corrugating Company the net earnings of the Wheeling Corrugating Company had been allowed to accumulate; and this caused it to come about that in the formation of the Whitaker-Glessner Company the Whitaker Iron Company received for the 2,255 shares of the capital stock of the Wheeling Corrugating Company and for the good will of the Wheeling Corrugating Company the sum of $1,676,000, which was paid to it by the Whitaker-Glessner Company in 16,760 shares of the capital stock of the Whitaker-Glessner Company, of a par value of $100 per share.

The Whitaker Iron Company disposed of its 16,760 shares of Whitaker-Glessner Company stock on January 27, 1904, by ordering a distribution in kind amongst its own stockholders of shares of Whitaker-Glessner Company stock equivalent to a 300 per cent. dividend on its own $500,000 capital stock, making 15,000 shares, and delivered in pledge 1,500 other shares to Robert C. Dalzell, as trustee, as collateral to secure the bonds of the Portsmouth Steel Company, then a subsidiary corporation, and retained in its own treasury 260 other shares, thus making the total of 16,760 shares.

Pursuant to ordering the distribution to its own stockholders of the 15,000 shares of Whitaker-Glessner Company stock January 27, 1904, the Whitaker Iron Company on March 15, 1905, by action of its stockholders and directors, had the Whitaker-Glessner Company is-

sue and deliver the 15,000 shares direct to and amongst the stockholders of the Whitaker Iron Company, according to their respective interests, and in that distribution the estate of George P. Whitaker received 1,500 shares; that number of shares being the equivalent of a 300 per cent. dividend upon the 500 shares of Whitaker Iron Company stock the estate then owned.

This holding of 1,500 shares of Whitaker-Glessner Company stock by George P. Whitaker's estate was increased 750 shares by a 50 per cent. stock dividend declared by the Whitaker-Glessner Company April 30, 1910, and thereby that estate came to own 2,250 shares of Whitaker-Glessner Company stock.

The estate of George P. Whitaker, pursuant to a decree of the circuit court of Cecil county, Md., filed April 17, 1912, in equity cause No. 2,913, made a distribution of these identical 2,250 shares of Whitaker-Glessner Company stock, and on June 12, 1912, Martha E. Whitaker, as executrix of Carrie C. Updegraff's will, received from the estate 282 shares of Whitaker-Glessner Company stock, her full distributive share, and on June 12, 1912, Ruth E. Whitaker received from the estate 94 shares of Whitaker-Glessner Company stock, likewise her full distributive share.

The estate of George P. Whitaker, deceased, is now the owner of 500 shares of stock of the Whitaker Iron Company. Martha E. Whitaker, as executrix of the will of Carrie C. Updegraff, deceased, is entitled as one of the appellants to an undivided one-tenth interest in the estate of George P. Whitaker, deceased; Ruth E. Whitaker, the other appellant, is entitled to an undivided one-thirtieth interest in the estate of George P. Whitaker, deceased; together appellants are entitled to an undivided four-thirtieths interest in the estate of George P. Whitaker, deceased.

The appellants, among other things, prayed that:

"And these plaintiffs further pray for discovery in full and deposit in this court, and that said designated defendants, and the legal representatives thereof, be required to set forth a complete list and description of every date, book, account, record, and writing of whatsoever nature, relating to or connected with the aforesaid matters, or any of them, which now are or ever were in their possession or control, or state where same can be found, if removed therefrom, and deposit the same in the office of the clerk of this court for inspection."

In response thereto the appellees produced the records of the corporation bearing upon the matters in controversy before the court below for its inspection, and in verification of the certified copies which were filed with and made a part of the pleadings of appellees. The court below found the facts as they were shown to be by the discovery made through the production of the corporate records mentioned, and also found that appellants, having prayed for full discovery, had been given what they asked for, and could not now be permitted to refuse to receive that which they had called for, the authenticity of which they did not deny.

Accordingly, the suit was dismissed in the court below upon the grounds: (a) That the appellants were not bona fide stockholders; (b) that upon the showing made by the discovery the appellants were

not entitled to the relief which they seek; (c) upon jurisdictional grounds.

[1] We will first consider the question as to whether the appellants are entitled to maintain this suit. While they do not allege that they are the owners of any of the stock of what is known as the Whitaker Iron Company, they do allege that the estate of George P. Whitaker owns stock in the Whitaker Iron Company, and that they are entitled upon a distribution of that estate to receive a certain number of the shares of such stock. The will of George P. Whitaker, deceased, empowers the trustee to convert the stock of the Whitaker Iron Company into money and, after complying with the residuary clauses of the testator's will by satisfying advancements and charges to be made against each of the distributees, to distribute the rest of the fund as directed: "To be paid and distributed * * * to * * * Carrie Whitaker and George P. Whitaker, Jr., share and share alike."

These appellants take through George P. Whitaker, Jr., and Carrie Whitaker, and the provision in the will, "To be paid and distributed * * * to * * * Carrie Whitaker and George P. Whitaker, Jr.," implies the payment of money and the distribution of the same. This provision of the will clearly shows that it was the purpose of the testator to have the trustee, whom he invested with the legal title to this stock, dispose of the same by converting it into money and making an equal distribution of the proceeds thereof subject to the limitations mentioned. The learned judge who heard this case in the court below, in referring to this phase of the question, among other things, said:

"In the memorandum opinion heretofore filed, I expressed doubt as to whether plaintiffs are entitled to be considered stockholders of the Whitaker Iron Company. I then held that the determination of that question must depend largely upon the terms of George P. Whitaker's will, which was not before me, and upon whether or not plaintiffs held, by any other independent title, shares of stock in the Iron Company. For this reason I required the supplemental bill or statement to be filed by plaintiffs touching these two points. This supplement discloses that plaintiffs hold no stock other than as distributees of George P. Whitaker's estate, which they claim has devolved by law upon them. Whether this is so or not must depend upon the construction to be given the Whitaker will. An authenticated copy of it is not yet filed in the case, but what purports to be an unauthenticated copy of it is presented by plaintiffs, which seems to be conceded by defendants to be a true copy. From it, it is clear that testator first directed his stock in the Iron Company and other personalty to be held in trust for the benefit of his widow and upon her death to go into his residuary estate, which residuary estate was to be divided equally between his five children, but advancements made to, and debts owing from, these children were to be ascertained from his books and accounted for by each in the distribution. He then adds: 'My sons Henry C. Whitaker and Cecil N. Whitaker being dead, the share of Henry C. I hereby direct to be paid and distributed to his children, Carrie Whitaker and George P. Whitaker, Jr., share and share alike.' Plaintiffs take only through Carrie Whitaker and George P. Whitaker, Jr., and then take only such sum of the whole residuary estate, now in the hands of the Maryland executor and not yet finally settled; this stock and other personalty has been reduced to money and the amounts, if any, that Henry C. Whitaker may have owed his father, the testator, are charged and accounted for. I cannot see, from the terms of this will, the Iron Company's stock in kind, have or can devolve by law upon plaintiffs, unless, by agreement between

them and the executor of the estate, they are transferred to and accepted by them in lieu of the money the will gives them."

Under these circumstances it cannot be said that any of the stock devolved by operation of law upon either of the appellants. "An estate is said to 'devolve' on another when by operation of law, and without any voluntary act of the previous owner, it passes from one person to another; but it does not devolve from one person to another as the result of some positive act or agreement between them. The word is itself of intransitive signification, and does not include the result of an act which is intended to produce a particular effect. It implies a result without the intervention of any voluntary actor. Francisco v. Aguirre, 29 Pac. 495, 497, 94 Cal. 180; First Nat. Bank of San Jose v. Menke, 60 Pac. 675, 677, 128 Cal. 103." Volume 3, Words and Phrases (Old Series), page 2050. Thus it will be observed that appellants do not own a single share of stock in the Whitaker Iron Company by gift or purchase, and, as we have stated, none of these shares of stock devolved upon either of them by operation of law.

Among other things, the bill contains the following allegation:

"Said estate has not been judicially settled. By the terms of his will, settlement was suspended during the lifetime of said testator's widow. Death has called her to his realm of eternal dreams. The defendant Joseph C. Coudon is the only surviving executor trustee of said will and estate of George P. Whitaker."

[2, 3] According to appellants' own showing, they would not be entitled to any of the shares of stock which "have not been judicially settled." The showing made by appellees in the court below in response to the request of appellants clearly shows that there is no foundation upon which to maintain this suit, even if the appellants had been bona fide stockholders at the time of the institution of the same. The court below, in referring to this point, among other things, said:

"Now that the defendants have substantially complied with this prayer, I am not inclined either to reject or refuse to consider these records at the instance of these plaintiffs so asking their production; and in this condition of things I am constrained to believe that only a very few facts drawn from these records will be necessary to show that plaintiffs' charges are groundless and they have no standing in equity. The bill charges that the Iron Company bought the Corrugating Company on September 17, 1900, for $250,000, and that on January 21, 1904, some three years and four months thereafter, the Iron Company 'conveyed its West Virginia properties to the former company (Whitaker-Glessner) for a consideration of 16,760 shares of the latter's capital stock, par value $1,676,000.' Those records show the fact to be that the Iron Company sold to the Whitaker-Glessner Company the capital stock of the Corrugating Company alone for 16,760 of these shares, par value $1,676,000, and that 15,000 of these shares were distributed in kind to Geo. P. Whitaker's estate, from which plaintiff Martha E. Whitaker, executrix, received 282 shares, and plaintiff Ruth E. Whitaker 94 shares. The contract filed shows that they have sold these shares to Gutman and his associates for $115 per share. Taking the facts admitted by the bill, and supplement them with the few above stated from these supplied records, it is apparent that these officers, directors, and controlling stockholders so bitterly charged with fraud, mismanagement, and corruption, in fact secured by purchase for their corporation, charged to have been defrauded in the premises, the Corrugating Company for $250,000, and in less than three years and a half thereafter sold it for more than six times the price given for it, taking in payment stock at

par which in fact was worth and was actually sold by these plaintiffs at an advance of $15 on the $100 par value. This purchase and sale of the Corrugating Company, it is to be borne in mind, was consummated more than a decade ago, when there were no unusual conditions, such as now exist, to advance prices for such properties. Comment is hardly necessary. It is reasonable to infer, I think, that a good many corporation stockholders in this country would be really delighted to be 'defrauded' in this way. It is well settled that any minority stockholder, seeking redress, must act promptly. Laches in such matters should always put a chancellor upon guard and cause him to more carefully ascertain the circumstances, and facts before assuming jurisdiction in the premises. Here more than 16 years have elapsed since the purchase was made of the Corrugating Company, more than 12 since the 'back-dated reconveyance,' and more than 2 years elapsed, after plaintiffs sold their stock, before they instituted this suit."

The foregoing is conclusive, and for the reasons hereinbefore stated we are of opinion that the decree of the lower court should be affirmed.

WOODS, Circuit Judge. I concur in the result on these grounds: The transactions complained of as fraudulent are alleged to have taken place from the years 1900 to 1904, more than 12 years before the bill was filed on the 7th of April, 1916. There was no allegation of ignorance on the part of the plaintiffs of the alleged fraud, nor how nor at what time they obtained knowledge of it, nor what efforts were made to ascertain the facts. This delay, without explanation, constitutes such laches as to warrant dismissal of the bill upon its face. Wollensak v. Reiher, 115 U. S. 96, 5 Sup. Ct. 1137, 29 L. Ed. 350; Hardt v. Heidweyer, 152 U. S. 547, 14 Sup. Ct. 671, 38 L. Ed. 548.

In addition to this, the plaintiffs in their bill make only the most general and indefinite charges of fraudulent conversion of corporate assets by the directors. The tenor of the bill indicates plainly that they relied upon discovery to be made by the defendants to make evident particulars of the transactions mentioned to establish the indefinite charges of fraud. The answer of the defendant and its exhibits is a substantial and full response to the demand for discovery. They set out the particulars of all the transactions brought in question by the plaintiffs, and so far from giving any indication of fraud they tend strongly to show that all earnings and profits of the several corporations involved were properly applied for the benefit of the stockholders. Since the plaintiffs relied on discovery to establish their charges, and discovery has shown nothing tending to establish them, the District Court was right in dismissing the bill for lack of equity in this respect, as well as for laches.