McQUILLEN et al. v. NATIONAL CASH
REGISTER CO. et al.

No. 2274.

District Court, D. Maryland.

March 17, 1938.

See, also, 13 F.Supp. 53.

James Morfit Mullen and R. Contee Rose, both of Baltimore, Md., and Arthur Berenson and Samuel Gottlieb, both of Boston, Mass., for plaintiffs.

R. Dorsey Watkins (of Piper, Carey & Hall), William L. Marbury, Jr. (of Marbury, Gosnell & Williams), and J. Kemp Bartlett, Jr. (of Bartlett, Poe & Clagett), all of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge.

The basic question here presented is as to what disposition this court should make of various motions which have been presented by the defendants, some to dismiss the bill of complaint in its entirety, and others to dismiss portions thereof.

The motions seeking dismissal of the bill of complaint as a whole are eight in number. Briefly summarized, they allege that the bill fails (1) to state a valid cause of action in equity; (2) to state facts sufficient to entitle the plaintiffs to any relief in equity; (3) to state facts sufficient to constitute a cause of action against the defendants; (4) to contain a sufficiently intelligible statement of the plaintiffs' claim so as to enable the defendants to answer; also that the bill shows, (5) noncompliance with Equity Rule 25, 28 U.S.C.A. following section 723, in that the bill consists merely of allegations or conclusions of law based upon information and belief; (6) the plaintiffs are guilty of laches; (7) misjoinder of parties defendant, contrary to Federal Equity Rule 26, 28 U.S.C.A. following section 723, since distinct and different liabilities are asserted against the defendants; and (8) noncompliance with Federal Equity Rule 27, 28 U.S.C.A. following section 723, in that the bill admits that the plaintiffs have made no effort to secure action on the part of the shareholders of the National Cash Register Company, without assigning any reason for not endeavoring to secure such action.

The motions to dismiss only portions of the bill of complaint instead of the entire bill are nine in number. Briefly summarized, their object is to have stricken from the bill the following parts: (1) All of that portion relating to transactions prior to June 20, 1928, on the ground that the plaintiffs were not stockholders prior to that date, and that therefore, under Equity Rule 27, they cannot complain of these transactions; (2) all that portion of the bill involving transactions prior to January 10, 1929, on the ground that plaintiffs purchased additional shares on that date; (3) all that portion of the bill relating to the original issuance of the "B" stock, on the ground that sufficient facts are not alleged to permit plaintiffs to maintain a derivative action for the benefit of the company or its shareholders, with respect to such issuance; (4) all that portion of the bill attacking the original issuance of the "B" shares of stock, on the ground that the right so to do is now barred by laches, or the statute of limitations; (5) all that portion of the bill attacking the original issuance of the "B" stock, on the ground that the allegations with respect thereto are mutually conflicting and inconsistent; (6) all that portion of the bill attacking the so-called profit-sharing plan of the National Cash Register Company, on the ground that such cause is barred by laches, or the statute of limitations; (7) all that portion of the bill attacking the issuance of shares of the common "C" stock, on the ground that there is a nonjoinder of indispensable parties defendant, namely, of the present holders of the former common "B" stock and common "C" stock, and of the common stock now representing the common "C" stock; (8) all that portion of the

bill attacking the issuance of the common "C" stock, on the ground that the bill fails to state facts sufficient to entitle the plaintiffs to maintain a derivative action with respect to such issuance; and, lastly, (9) all that portion of the bill attacking the issuance of the 238,000 shares of "A" stock in lieu of dividends, on the ground that there is a nonjoinder of indispensable parties defendant, namely, of the original holders or transferees of such shares.

The following summary of the allegations in the bill of complaint that are material to the issues here raised is an essential preliminary to a consideration of those issues.

The defendant corporation, the National Cash Register Company, was incorporated in January, 1926, with two classes of stock, "A" preferred, with an authorized issue of 1,100,000 shares, and the "B" preferred stock, with an authorization of 400,000 shares, both of these classes of stock being of no-par value. The "A" shares carried cumulative dividends of $3 per share, while the "B" shares carried a dividend of like amount, but noncumulative. Upon dissolution or payment of dividends in excess of $3, the "A" and "B" shares were to be placed on a parity. With the "B" shares went the right to elect a majority of the company's directors, but, in the event of default in two successive quarterly payments of dividends on the "A" shares, the "A" shareholders were to have the right to elect the majority until all accumulated dividends had been paid in full.

In January, 1926, some of the defendants, namely, Dillon, Read & Co., and Messrs. F. B. Patterson, Kuhns, Barringer, Allyn, Haswell, Hartman, Steffey, and James, caused the company to entrust to Dillon, Read & Co. the sale of the "A" shares, with the understanding that all of the proceeds therefrom were to be paid to the company. Dillon, Read & Co. sold these shares at $50 per share, that is, for the total sum of $55,000,000, none of which was ever turned over to the company. Out of this amount, $40,000,000 was paid to the various defendants, who were officers and directors of another company, already incorporated in Ohio, and, through an unlawful arrangement, the assets of this company, subject to its liabilities, were transferred to the National Cash Register Company. The balance, or $15,000,000, Dillon, Read & Co. retained itself.

This alleged fraudulent arrangement is stated in the bill of complaint to have been carried out in the following manner: The various defendants just named arranged to control the 90,000 shares of common stock of the Ohio company by causing the National Cash Register Company to issue, in exchange for such stock, all of its own authorized "A" and "B" shares. Dillon, Read & Co. then pretended to buy the 1,100,000 "A" shares and 50,896 "B" shares for $40,000,000, the named defendants taking the balance of the "B" shares. In order to give Dillon, Read & Co. funds with which to carry out this transaction, and in order that the named defendants might be paid, they, as directors of the National Cash Register Company, appropriated to themselves the money received from the subscribers to the "A" shares. Dillon, Read & Co. sold 16,667 shares of the "B" stock at an additional profit of $550,000. Thereupon, these named defendants set aside to themselves 150,000 "B" shares, to be paid for in future services. The assets received from the Ohio company were not worth more than $34,000,000, while these named defendants received $55,000,000 and the 400,000 "B" shares. Of the 150,000 "B" shares set aside to be paid for in future services, 45,000 were distributed between the years 1927 and 1932, inclusive, the balance of the "B" shares, or their equivalent in shares for which they were exchangeable, now being held by the other defendants.

It is further alleged that, no dividends having been paid on the "A" shares since the fall of 1931, the defendants, in November and December, 1932, caused the adoption by the board of the National Cash Register Company of resolutions authorizing the following unlawful transactions: Because of the small worth of the "B" shares as a result of the nonpayment of dividends, which was directly contrary to the situation with respect to the "A" shares, the defendants, as directors, issued "C" shares in exchange for the "B" shares, this new stock to have the same privileges as the "A" shares. The company's charter was then amended, converting the "C" shares into "A" shares, with the result that there was left only one class of stock, one share of "C" stock being issued for every two shares of "B" stock. Those defend-

ants, who were directors at the time, further purported to have the "A" shareholders cancel the $7,000,000 unpaid dividends on the "A" stock, and to issue, in lieu thereof, "A" shares equal to 20 per cent. of their then holdings of "A" shares, without consideration and in violation of the agreements with the "A" shareholders. By this arrangement, 238,000 additional "A" shares were issued.

In 1931 Edward A. Deeds, one of the present defendants, was elected president of the board of the National Cash Register Company, and it is further alleged that the year following, the various defendants, as directors of the National Cash Register Company, purchased with the company's funds 50,000 "A" shares, and secretly gave Deeds an option, without consideration, to purchase these shares over a period of, five years, at the rate of 10,000 shares each year, at $9.80 per share, although the book value was $50 per share. The company had no surplus at this time. This option, by reason of the additional "A" shares issued as a stock dividend, has been increased to cover a total of 60,000 shares.

A recapitulation of the total outstanding stock of the company at the time the amended bill of complaint was filed, namely, February 4, 1935, and as alleged therein, is as follows: 1,628,000 "A" shares, resulting from the following sequence of share issuance: 1,100,000 "A" shares originally issued; 200,000 "A" shares originally issued as "B" shares and exchanged for "C" shares; 238,000 "A" shares issued in lieu of accumulated dividends; and 90,000 "A" shares issued by the original Ohio company.

The first purchase by the plaintiffs of stock of the National Cash Register Company is alleged in the bill to have been on or about June 20, 1928, additional stock having been purchased by them on January 10, 1929, and their ownership at the time of the filing of the bill of complaint, consisting of 100 "A" shares.

As a result of the original decision of this court with respect to the jurisdictional question involved (See 13 F.Supp. 53), whereby, and also by virtue of this court's order of June 16, 1937, the plaintiffs' right to be heard is limited to those prayers which ask relief of an in rem nature only, the number of prayers for relief have been reduced from nineteen in the original bill to eight in the amended bill, as limited by the order of this court above referred to.

These eight prayers for relief are summarized as follows, and for convenience are given the same numbers accorded them in the amended bill of complaint: (4) That the 400,000 "B" shares issued to the defendants be declared null and void, and canceled on the books of the company; and that the "C" and "A" shares issued in lieu thereof also be declared null and void and likewise canceled; (6) that the "C" and "A" shares issued in lieu of the "B" shares be declared to have been illegally issued, and the transaction by which such shares were issued be declared null and void and the shares be canceled on the books of the company; (8) that the 238,000 "A" shares issued in lieu of dividends be canceled on the books of the company as being null and void; (9) that the option given the defendant Deeds be declared null and void, and the company be enjoined from giving effect to that option; (12) that the officers and directors of the company be enjoined from paying dividends on the 400,000 "B" shares, and also upon the 200,000 "C" and 200,000 "A" shares issued in lieu of the "B" shares; (13) that the officers and directors of the company be enjoined from paying dividends on the 238,000 "A" shares issued in lieu of dividends; (14) that the officers and directors of the company be enjoined from declaring or paying any dividends on any of the shares involved in the option to defendant Deeds; (19) that the plaintiffs be accorded such other and further relief as the court may deem appropriate.

In approaching the multifarious questions which are thus presented by the various motions, we will first consider the question of the effect of Equity Rule 27 upon plaintiffs' right to relief, and next the effect of plaintiffs' failure to join all of the owners of the 238,000 shares of the "A" stock issued in lieu of the $7,000,-000 accrued dividends due to the "A" shareholders in 1932, since these two questions are of major importance.

I. Equity Rule 27, 28 U.S.C.A. following section 723, provides, among other things, that a plaintiff must allege that he was a "shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law." Applying this rule to the facts in the present case, we conclude that it is a bar to plaintiffs' right to any relief with respect to any transactions occurring prior to June 20, 1928, the date on

which plaintiffs first acquired stock in the defendant corporation.

The bill of complaint alleges that plaintiffs were shareholders at the time of the grievances of which they complained. However, it is within the province of the court to determine whether a plaintiff is in fact actually within the terms of this rule. See Corbus v. Alaska Mining Co., 187 U.S. 455, 463, 23 S.Ct. 157, 47 L.Ed. 256. It was adopted as a result of the decision in Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827, in order to prevent litigious persons from prosecuting in the federal courts suits which otherwise would be required to be brought in the state courts, and is to be strictly construed. The shareholder must comply with this rule, whether the acts of the directors have been fraudulent or ultra vires. See Hawes v. Oakland, supra; Dimpfell v. Ohio, etc., Railway Company, 110 U.S. 209, 3 S.Ct. 573, 28 L.Ed. 121; Venner v. Great Northern Railway Co., 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666; Hitchings v. Cobalt Central Mines Co., C.C., 189 F. 241; Bimber v. Calivada Colonization Company, C.C., 110 F. 58; Arn v. Operators Royalty & Producing Company, D.C., 13 F.Supp. 769; Price v. Union Land Company, 8 Cir., 187 F. 886.

The actual issuance of the "B" stock, of which plaintiffs complain, took place prior to June 20, 1928; that is to say, in January, 1926. We cannot subscribe to the theory that this issuance was a continuous transaction, on the ground as asserted that the defendants continually conspired to ruin or control the corporation through their ownership of this stock. Rather is it correct to say that the issuance of this stock was a finished transaction in 1926. To hold otherwise would be to invent a means to evade Equity Rule 27.

It thus appearing that plaintiffs were not stockholders at the time of this particular transaction of which they complained, it next becomes necessary to determine whether these shares of "B" stock may have devolved on them "by operation of law." The phrase "operation of law" is used in the rule to indicate the manner in which a party acquires rights and sometimes liabilities without any act or cooperation of the party himself. See Whitaker v. Whitaker Iron Co., 4 Cir., 249 F. 531, certiorari denied 248 U.S. 564, 39 S.Ct. 8, 63 L.Ed. 423. Obviously, according to the bill of complaint, the shares did not so devolve upon the plaintiffs. McQuillen and Gottlieb are trustees under the Bryant McQuillen trust. Gottlieb is also trustee under the William McQuillen will. In the latter capacity, Gottlieb purchased 50 "A" shares on June 20, 1928. He later transferred 25 of these shares to himself and Bryant McQuillen under the trust indenture referred to. On January 10, 1929, Gottlieb, as trustee under the William McQuillen trust, purchased more of these shares. In their capacities as trustees, they now own 100 shares. It thus appears that these shares were not in the estates when the plaintiffs were appointed trustees (in which event the shares would then have devolved upon them by operation of law), but that they, as trustees, subsequently purchased such shares.

Since these 400,000 "B" shares were issued in 1926, the question of plaintiffs' right to object to the transactions involving the 150,000 "B" shares set aside by the defendants for themselves, to be paid for in future services, is easily disposed of. Article 23, § 41(6), of the Maryland Code, prohibits the *issuance* of stock for personal services to be rendered in the future. Mas Bottle Corporation v. Cox, 163 Md. 176, 161 A. 243. The bill of complaint itself, when speaking of the conduct of the defendants as directors with reference to transactions in 1926 involving these 150,000 "B" shares, alleges: "They secretly and illegally *issued* the 'B' shares to themselves for future services to be rendered by these defendants and the other officers, directors and employees." (Italics supplied.) Therefore, since it is the issuance of the stock which is made unlawful, and since plaintiffs allege that the stock was issued in 1926 as part of the original scheme, their right to complain of such issuance is barred by Equity Rule 27, for the reasons heretofore explained. The fact, as the bill subsequently alleges, that 45,000 out of the 150,000 "B" shares were, between 1927 and 1932, transferred to various officers, agents, and employees of the company, and that the remainder of these shares is now being held by the defendants, is immaterial, since the act complained of as being illegal was the *issuance,* and such issuance occurred prior to the time when the plaintiffs acquired their shares. Any wrong of which the plaintiffs, in the fiduciary capacity in which they now bring suit, were entitled to complain, occurred when the **stock was**

originally issued, and not when, following such issuance to the defendants, the latter may have disposed of it.

Accordingly, defendants' motion to dismiss so much of the bill of complaint as involves transactions prior to June 20, 1928, must be granted. The National Cash Register Company filed a motion in this proceeding on June 25, 1937, pursuant to Equity Rule 20, 28 U.S.C.A. following section 723, asking for a further and better statement of matters embraced in the amended bill of complaint relating to this particular question. This motion has never been acted upon, by this court, and such now becomes obviously immaterial.

■ II. We now turn to the second major question presented by defendants' motions, namely, whether plaintiffs' failure to join all of the owners of the 238,000 shares of the "A" stock issued in lieu of $7,000,000 in back dividends due to the "A" shareholders in 1932 is a fatal defect, since plaintiffs are attempting to cancel those shares without joining all such owners as defendants. Plaintiffs claim that such joinder is not necessary because they have brought a representative suit, in accordance with the provisions of Equity Rule 38, 28 U.S.C.A. following section 723.

That rule provides as follows: "When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole." Applying this requirement to the facts as disclosed in the present case, we conclude that the nonjoinder is fatal. From what was disclosed at the hearing on defendants' motions, it is understood that plaintiffs had refused to accept the stock dividend in question. If this be true, it is obvious that plaintiffs, not being members of a class of stockholders owning or receiving this stock dividend, may not now be heard to say that they represent such class of stockholders. However, even assuming that plaintiffs had accepted this stock dividend, they still could not be heard to say that they represent the absent shareholders of the same class, or that the rights of such absentees are properly before the court for adjudication.

■ The general rule applicable to representative suits has been enunciated by the Supreme Court on many occasions. Broadly stated, it provides that, where the parties have a common interest in the question or subject matter before the court, they may, where numerous, be represented in a class suit, as the very language of Equity Rule 38 expressly provides. See Smith v. Swormstedt, 16 How. 288, 14 L. Ed. 942; Ayres v. Carver, 17 How. 591, 15 L.Ed. 179, and Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673. It is entirely within the province of the trial court, when a suit is brought under Equity Rule 38, to determine whether this "common or general interest" exists. See Hill v. Eagle Glass & Manufacturing Co., 4 Cir., 219 F. 719, modified in Eagle Glass & Mfg. Co. v. Rowe, 245 U.S. 275, 38 S.Ct. 80, 62 L.Ed. 286; and American Steel & Wire Co. v. Wire Drawers, etc., Unions, C.C., 90 F. 598. Here the subject matter, generally speaking, is common to all of the shareholders, but this is not tantamount to saying that their interests appear to be identical, for it nowhere appears from the bill of complaint that all of the holders of the stock dividend are dissatisfied, or that they desire such stock canceled. Indeed, it is more reasonable to infer from the fact that other shareholders have not sought to intervene in the present suit that they consider such cancellation would be detrimental rather than beneficial to their interests. See Carson v. Allegany Window Glass Company, C.C., 189 F. 791; Huntington v. Palmer, 104 U.S. 482, 26 L.Ed. 833; and Corbus v. Alaska Mining Company, supra.

There are numerous analogous cases indicating that the holders of such a stock dividend are necessary parties in a situation of this kind. See Weidenfeld v. Northern Pacific Railway Co., 8 Cir., 129 F. 305; Talbot J. Taylor & Co. v. Southern Pacific Company, C.C., 122 F. 147, and Ribon v. Chicago Railway Company, 16 Wall. 446, 21 L.Ed. 367. The present plaintiffs are saying one moment that they represent all holders of this stock dividend, yet the next moment they are attempting to cancel their stock and to restrain dividend payments thereon, without showing, or being able to show, that any of the holders are of like mind. The English rule is to the same effect. See Mozley v. Alston, 1 Phill.Ch. 790, 798; Richardson v. Larpent, 2 Y. & C.C.C. 507; Jones v. Garcia Del Rio, Turner and Russell 297; Carlisle v. Southeastern Railway, 1 M. & G. 689; and Fawcett v. Laurie, 3 L.T. 50.

▮ Nor may it be correctly contended that the absent shareholders are in effect adequately represented by the corporation, the National Cash Register Company, in its capacity as party defendant. Such principle is only applicable where the question has to do with the corporation as such, or its functions, as distinct from the question of rights which pertain to persons in their character as shareholders. See Weidenfeld v. Northern Pacific Railway Co., Taylor & Co. v. Southern Pacific Co., and Ribon v. Chicago Railway Company, supra.

Recapitulating our conclusion on this point, since it clearly appears that the absent holders of the stock dividend are indispensable parties and are not represented by the plaintiffs or by the corporation, within the meaning of Equity Rule 38, the motion of defendants to strike out all that portion of the amended bill of complaint which seeks a cancellation of the 238,000 "A" shares as dividends must be granted.

▮ We now turn to the additional arguments presented by defendants' motions. First among these we will consider one strongly urged, to the effect that plaintiffs have failed to comply with the further provision of Equity Rule 27, 28 U.S.C. A. following section 723, that the bill must "set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action, or the reasons for not making such effort."

It is well settled that this portion of Equity Rule 27 must be applied in a practical, common-sense manner. Delaware & Hudson Co. v. Albany & Susquehanna Railroad Company, 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862; Krouse v. Brevard Tannin Company, 4 Cir., 249 F. 538. In the present suit the bill alleges that the fraud of which plaintiffs complain has been committed by the present directors of the National Cash Register Company, all of whom have been made parties defendant. The bill further states that plaintiffs have made no effort to secure action on the part of the directors, officers, or shareholders for the reason that "The company is, and has been for many years, dominated and controlled by the individual defendants, who constitute a large majority, or practically all, of the present officers and directors. If the individual defendants were permitted to conduct this suit, it would be prosecuted by them for the company against themselves." It thus clearly appears that an appeal to the directors would be futile, since it is apparent on the face of the pleadings that their interests are antagonistic to those of the plaintiffs. Surely, the usual preliminary steps incident to a stockholder instituting a suit of this kind are not to be treated as indispensable, when the interests of the directors are antagonistic to those of the corporation, and such fact is shown by the pleadings. The same common-sense rule must be applicable with respect to the requirement of first appealing to stockholders through regular or special meetings. See Excelsior Phosphate Company v. Brown, 4 Cir., 74 F. 321; Hyams v. Calumet & Hecla Mining Company, 6 Cir., 221 F. 529; Krouse v. Brevard Tannin Company, supra; American Creosote Works v. Powell, 5 Cir., 298 F. 417, certiorari denied 265 U.S. 595, 44 S.Ct. 638, 68 L.Ed. 1198; Whittaker v. Brictson Manufacturing Company, 8 Cir., 43 F.2d 485; Arn v. Bradshaw Oil Company, 5 Cir., 93 F.2d 728.

From the aforegoing authorities, which are representative of a large number of others, it is apparent that by the weight of the authorities, including those which must govern this court, the failure of the plaintiffs to appeal to their board of directors, as well as their failure to appeal to their fellow stockholders, is excusable, or, as it is more appropriate to say, Equity Rule 27 is not applicable to a state of facts such as those with which we are here confronted.

Next we will consider defendants' motion to strike out all portions of the bill of complaint relating to the original issuance of the "B" stock, and to the profit or bonus-sharing plan (concerning the 150,000 "B" shares), on the ground that the right to contest these matters has long since been barred by laches and the statute of limitations.

▮ In reply to this argument, suffice it to say, first, that in proceedings in equity statutes of limitations governing actions at law are at most persuasive, not controlling—see Gross v. Tierney, 4 Cir., 55 F.2d 578—and, secondly, that, in view of the application of Equity Rule 27 to plaintiffs' right to complain of the original issuance of the "B" stock, including the 150,000

shares thereof, which we have already fully considered and ruled upon, it is unnecessary to discuss the application of the doctrine of laches to those transactions.

In addition to the motions which have just been considered, defendants, as has been pointed out at the beginning of this opinion, filed several motions to dismiss the bill of complaint or portions thereof on various other grounds, namely, that (1) the bill does not state a cause of action; (2) it is not sufficiently intelligible to enable one to make the appropriate answer to it; (3) it does not state sufficient facts to meet the requirements of Equity Rule 25, defining the requisite contents of a bill in equity; (4) plaintiffs are not shown to be in a position to maintain a derivative action for the benefit of the corporation, for the cancellation of the "B" shares originally issued (as to which issuance, this motion, by our rulings already made, is automatically disposed of); and also with respect to the "C" shares exchanged for the "B" shares; and (5) there has been a misjoinder of parties defendant, contrary to the requirements of Equity Rule 26, in that distinct and different liabilities are asserted against the several defendants.

■ In so far as the two last mentioned points are concerned (Nos. 4 and 5), suffice it to say, first, that plaintiffs have brought this suit as a minority stockholders' bill under Equity Rule 27, in the form of a derivative action, by complaining of the transaction resulting in the exchange of the "C" or "A" shares for the "B" shares, because such action is "founded on rights which may properly be asserted by the corporation," that is to say, by its officers and directors; and, since it is well settled that stockholders may in equity sue on behalf of their company if their directors fraudulently fail to do so, or where the directors are beneficiaries of the suit—Hawes v. Oakland, supra; Ogden v. Gilt Edge Consolidated Mines Company, 8 Cir., 225 F. 723; Whittaker v. Brictson Manufacturing Company, supra—the present plaintiffs are proper parties plaintiff. Furthermore, our rulings hereinbefore made have not disposed of this question, and, with respect to it, plaintiffs are entitled to be heard. They were stockholders at the time of the alleged unlawful exchange of stock. Second, the amended bill of complaint, as restricted in its application for relief by this court's order of June 16, 1937, complies with the provisions of Equity Rule 26, because in the bill as now limited the same action, namely, that in rem, and the same wrongdoing, namely, the cancellation of stock, is alleged against each one of the several defendants.

There is no merit in defendants' objection to the fact that none of the transferees or present holders of the "B" common stock and "C" common stock, and of the "A" common stock now representing the latter, have been named or made parties defendant, because it appears from the bill that the defendants, the directors, were the owners of the "B" shares, and, as such, became and still are, the largest owners of the "C" and "A" shares issued in exchange therefor.

■ Next, as to grounds (1) and (2) above referred to, while clearly the bill is inartistically drawn, we conclude that in its present limited shape it does state facts sufficient to constitute a cause of action, and contains a sufficiently intelligible statement of the nature of plaintiffs' claim to enable the defendants to file an appropriate answer to it. See Krouse v. Brevard Tannin Co., supra.

■ Turning next to defendants' motion to dismiss the bill for noncompliance with Equity Rule 25 (ground (3) above), in that it does not contain a sufficient statement of the facts upon which plaintiff seeks relief, but consists of allegations or conclusions of law merely upon information and belief, we conclude that this motion is also without merit. The interpretation of the words "ultimate facts," as contained in Equity Rule 25, was very recently before the Supreme Court in Mumm v. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983. The court there said (301 U.S. 168, at pages 170, 171, 57 S.Ct. 675, 676, 81 L.Ed. 983): "The 'ultimate facts' which are to be stated are manifestly distinguished from evidentiary facts. What are these 'ultimate facts'? They are the facts which the plaintiff must prove, the facts 'upon which the plaintiff asks relief,' not the facts which the defendant must prove in establishing an affirmative defense. No analysis of Equity Rule 25 can make it other than a requirement that the plaintiff must concisely set forth the ultimate facts which are sufficient to constitute his cause of action." We find that the plaintiffs have satisfactorily met the requirements of

Equity Rule 25 as thus interpreted. It is sometimes necessary and proper in equity pleadings to make deductions from the facts, which are in a sense conclusions of law. Furthermore, while, as a general rule, whatever is essential to the right of the complainant to maintain a bill in equity is necessarily within his knowledge, and therefore ought to be alleged not on information and belief, but positively and with precision; nevertheless, this requirement presupposes that the facts are known to the plaintiff personally. In any case, therefore, where the matters are not within the knowledge of the plaintiff, he may allege the facts on information and belief, because clearly no rule of pleading should be permitted to defeat the right of a person to sue merely because he is lacking in personal knowledge of *all* of the facts and may not be able to swear that *all* essential facts were known to him. See Leavenworth v. Pepper, C.C., 32 F. 718; Murray Company v. Continental Gin Company, C.C., 126 F. 533; Helmet Company v. Wrigley Company, 6 Cir., 245 F. 824; Moore v. New York Cotton Exchange, 2 Cir., 296 F. 61, affirmed in 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370; Boyd v. Nebraska ex rel. Thayer, 143 U.S. 135, 146, 181, 12 S.Ct. 375, 36 L.Ed. 103. We conclude that the allegations in the present bill of complaint satisfy the requirements of Equity Rule 25, since the transactions complained of are peculiarly within the knowledge of the defendants rather than of the plaintiffs.

To summarize our entire conclusions, the following disposition is made of the defendants' motions: (1) All of those motions, eight in number, which relate to dismissal of the amended bill of complaint as a whole, are denied; and (2) of the other motions, nine in number, which relate to dismissal merely of portions of the bill, Nos. 1 and 9 are granted; Nos. 2, 7, and 8 are denied; and, because of the conclusions here reached, it becomes unnecessary to pass upon Nos. 3, 4, 5, and 6. It is considered unnecessary to repeat here the subject matter of each of these motions, because such is amply stated at the beginning of this opinion.

It thus follows that the following disposition of the amended bill of complaint must be made: (1) Those portions of the prayers for relief, Nos. 4 and 12, seeking cancellation of the original issuance of the "B" stock and the restraining of any dividends thereon, must be struck out because of the decision herein with respect to the requirments of Equity Rule 27; (2) prayers for relief, Nos. 8 and 13, seeking cancellation of the 238,000 "A" shares issued in lieu of back dividends, and the restraining of the declaration or payment of any dividends thereon, must be struck out, because of our ruling herein on the question of nonjoinder of the owners of these 238,000 "A" shares; (3) prayer for relief No. 6 and so much of prayers for relief Nos. 4 and 12 as seek the cancellation of the "C" and "A" shares issued in exchange for the "B" shares, and the restraining of dividends thereon, will be allowed to remain in the bill; (4) prayers for relief Nos. 9 and 14, seeking cancellation of the option given to defendant Deeds, and the restraining of dividends in pursuance of that option, will also be allowed to remain in the bill; and (5) prayer for relief No. 19, seeking such other and further relief as this court may find to be proper, will also be allowed to remain in the bill.

It will thus be seen that the net result of this decision is to limit the transactions with respect to which the plaintiffs from now on will be permitted to be heard, to the following: (1) The transaction resulting in the exchange of the "C" and "A" shares for the "B" shares; and (2) the option to defendant Deeds. Since both of these transactions occurred in 1932, and since this suit was instituted on July 5, 1934, there is no proof that the plaintiffs have been guilty of laches such as to bar them from proceeding with the suit within the limits just defined.